296 Ga. 681
FINAL COPY

S14A1925.  HEARD v. THE STATE.

HUNSTEIN, Justice.

Appellant Eric Tramaine Heard was convicted by a jury of murder and related offenses in connection with a July 2009 burglary and attempted robbery culminating in the shooting death of Shereecka Pitts in the presence of her two young daughters and her sister.  Appellant appeals the denial of his amended motion for new trial, contending that the evidence was insufficient for a jury to find him guilty; his trial counsel rendered ineffective assistance; and the trial court erred with regard to certain witness testimony and by not giving a specific jury instruction.  Finding no error, we affirm.[1]

---

[1] On December 16, 2010, a Clayton County grand jury indicted Appellant for the following: malice murder; felony murder (predicated on burglary); felony murder (predicated on aggravated assault); burglary; 12 counts of aggravated assault; four counts of criminal attempt to commit armed robbery; kidnapping; simple battery; false imprisonment; eight counts of possession of a weapon during a crime; and possession of a firearm by a convicted felon.  Appellant was tried by a jury on February 27-March 1, 2012.  The jury found Appellant guilty of two counts of felony murder, eight counts of aggravated assault, four counts of criminal attempt to commit armed robbery, kidnapping, simple battery, false imprisonment, eight counts of possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. On March 12, 2012, the court sentenced Appellant to life imprisonment for felony murder, a consecutive life term for kidnapping, and consecutive terms totaling 116 years for the counts of aggravated assault, simple battery, false imprisonment, possession of a firearm during the commission of a

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. On the morning of the crimes, Pitts, her daughters, and her sister, Lachauda Pitts, were at Pitts' house watching television when they heard the doorbell ring; they saw no one at the door. After going back to Pitts' bedroom, they heard people coming in the house and saw two men approaching them. The two women ran towards the garage in an effort to escape. Behind her, Lachauda then heard one of the men say, "You move I'll blow your mother f****** brains out." She turned to see one of the men holding a .40 caliber firearm and the other holding a firearm she could not identify. The women stopped and retreated towards the bedroom where the two young girls were located. The gunmen followed.

The two men demanded money, and the women replied that they did not have any. Pitts told the assailants to take anything in the house, and Lachauda got on the ground. Lachauda watched as Appellant opened the closet door,

crime, and possession of a firearm by a convicted felon. The remaining counts merged or were vacated by operation of law. Appellant filed a motion for new trial on March 30, 2012, which was amended on February 20, 2013. After a hearing on Appellant's amended motion for new trial on March 21, 2013, the trial court denied Appellant's motion on January 7, 2014. Appellant filed a notice of appeal on February 6, 2014. The appeal was docketed to the September 2014 term of this Court and submitted for a decision on the briefs.

2

pushed Pitts inside, and demanded that she find money. The other man pointed a gun in Lachauda's face and repeatedly said that he would shoot her, while she begged for her life. Lachauda then observed Appellant shoot Pitts in the abdomen and saw her fall to the ground. Lachauda watched as Appellant shot Pitts again in the leg. Pitts' daughters began jumping and crying hysterically upon seeing their mother shot. Appellant then put his hand around Lachauda's throat and said, "I'll just do you how I just did your mother f****** sister [sic] where the money at?" Appellant pointed a gun in Lachauda's face and told her to get the two girls off of the bed before he shot them. Lachauda gathered the girls off of the bed and tried to calm them. Appellant demanded cell phones from Lachauda, but she could not locate them. Appellant and the other gunman then ran out of the front door.

When police arrived on the scene, they found Pitts unresponsive, with gunshot wounds to her right thigh and abdomen. She died of these wounds at the hospital. The bullet recovered from her body matched another bullet that investigators found on the bedroom carpet. Investigators also recovered a .40 caliber shell casing in the bedroom.

Lachauda was able to give a description of both gunmen to the lead

detective at the scene. Approximately two hours later, Lachauda spoke further with this detective at police headquarters and gave descriptions of the two gunmen to a sketch artist. Based on tips received after the media published the sketches, investigators identified Appellant as one of the assailants. Four days later, the lead detective showed Lachauda a photographic lineup. Upon seeing Appellant's photograph in the lineup, Lachauda immediately began crying and shaking, and she identified Appellant as the shooter and the gunman that had demanded money, threatened her and the girls, grabbed her by the throat, and pointed a gun in her face. She testified to this effect at trial and identified him in open court.

After police arrested Appellant, Sterling Flint contacted police, claiming to have information about the murder. Flint met with police, where he gave a videotaped statement implicating Appellant as the shooter. At trial, Flint changed his story, claiming that he did not know Appellant and that he had lied in his statement to police. The videotaped statement was played for the jury. In it, Flint told investigators that he knew that Appellant "did it" and that he had heard Appellant say, in reference to the crimes, "B**** should have gave [sic] up the money" and "nobody gonna [sic] find out what I did to the b****."

4

1. The evidence as described above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Appellant was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant argues that the photographic lineup shown to Lachauda was so impermissibly suggestive that it gave rise to a substantial likelihood of irreparable misidentification. We disagree.

> An unduly suggestive procedure is one which leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is equivalent to the authorities telling the witness, "This is our suspect." Where the identification procedure is not unduly suggestive, it is not necessary to consider whether there was a substantial likelihood of irreparable misidentification.

Williams v. State, 290 Ga. 533, 535-536 (2) (a) (722 SE2d 847) (2012) (punctuation omitted).

Applying this standard, we conclude that the photographic lineup shown to Lachauda was not unduly suggestive. Though Appellant asserts that the lead detective improperly used a post-arrest photograph of Appellant in the photographic array, we find no error. Each of the photographs in the lineup

5

depicted a black male standing before a similar blue background. The fact that a post-arrest photograph of Appellant was used in the lineup does not render it impermissibly suggestive. See Sharp v. State, 286 Ga. 799 (4) (692 SE2d 325) (2010) (photographic lineup consisting of booking photographs did not render them impermissibly suggestive). Moreover, the record does not indicate any police action that would have led Lachauda to single out Appellant in the lineup. Lachauda had a physical reaction to Appellant's photograph during the lineup, was confident that he was the shooter, and was consistent in her identification from the time of the lineup, four days after the crimes, through the time of trial.

3. Appellant argues that his trial counsel rendered constitutionally ineffective assistance. To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of his trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light

6

of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

(a) Appellant asserts that counsel were ineffective for failing to file a motion to suppress Lachauda's identification of Appellant in the photographic lineup. Given our determination that the photographic lineup shown to Lachauda was not unduly suggestive, any such motion by counsel would not have been successful, and Appellant thus can show neither deficient performance nor prejudice in this regard. See Durden v. State, 293 Ga. 89, 97 (6) (a) (744 SE2d 9) (2013) ("failure to make a meritless motion or objection cannot constitute ineffective assistance of counsel").

(b) Appellant contends that counsel failed to properly impeach Flint with his prior convictions. Given Flint's acknowledgment during his trial testimony that he was at that time incarcerated on unrelated charges, Appellant cannot show prejudice from counsel's failure to probe more deeply into Flint's criminal history. Additionally, insofar as Appellant neglected to introduce evidence of

any of Flint's prior convictions at the new trial hearing, this claim must fail. See Fuller v. State, 278 Ga. 812 (2) (d) (607 SE2d 581) (2005).

(c) Appellant asserts that counsel were ineffective for failing to impeach Lachauda with her prior inconsistent statements. However, Appellant's trial counsel were not questioned at the new trial hearing about their failure to impeach Lachauda, and we thus must presume that their decisions in this regard were reasonably strategic and cannot give rise to an ineffectiveness claim. See Bright v. State, 292 Ga. 273 (2) (a) (736 SE2d 380) (2013).

(d) Appellant contends that counsel failed to call a rebuttal witness to contradict Flint's testimony. To prevail on this claim, Appellant must make "an affirmative showing [of] how counsel's failure would have affected the outcome of his case" by demonstrating that the rebuttal witness' testimony would have been relevant and favorable to him. Goodwin v. Cruz-Padillo, 265 Ga. 614, 615 (458 SE2d 623) (1995). Although the rebuttal witness testified at Appellant's hearing on his motion for new trial, he did not testify specifically about what his trial testimony would have been. Having failed to make any proffer of the rebuttal witness' expected trial testimony, Appellant cannot establish prejudice in this regard. Id.

8

(e) Appellant asserts that counsel failed to investigate the owner of a cell phone found at the crime scene. However, Appellant did not produce this cell phone at the new trial hearing, nor did he make any proffer as to what further investigation would have uncovered. He thus cannot establish ineffective assistance of counsel on this ground. White v. State, 293 Ga. 825 (2) (c) (750 SE2d 165) (2013).

(f) Appellant also claims his counsel were ineffective for failing to produce Appellant's cell phone records. However, counsel testified at the new trial hearing that they had obtained these records, reviewed them, and spoken to Appellant about his incoming and outgoing calls. Counsel testified that they did not have any reason to disbelieve what Appellant told them about the calls and his whereabouts when he received the calls, and that, on this basis, they did not follow up further in this regard. Applying the strong presumption that counsel's conduct fell within the wide range of reasonable professional performance, we do not find that counsel's actions here were so patently unreasonable that no competent attorney would have followed such a course. See Romer, 293 Ga. at 344. Additionally, Appellant has failed to establish how this evidence or other information from his cell phone records would have been favorable to his

defense. See White, 293 Ga. at 827-828.

(g) Appellant also contends that counsel were ineffective because (1) they never questioned Appellant's alibi witness about Appellant's whereabouts on the morning of the murder; (2) they failed to request limiting instructions when the trial court allowed the State to impeach Flint by playing his videotaped statement; and (3) they failed to request a jury charge on "assault" as it related to aggravated assault alleged in the indictment. Appellant did not raise any of these issues in his amended motion for new trial or at the hearing on his motion, and the trial court did not rule on them. Accordingly, he has failed to preserve these issues for review on appeal. Jones v. State, 294 Ga. 501 (2) (755 SE2d 131) (2014).

4. Appellant argues that the trial court erred with regard to Flint's testimony. First, he asserts that the court improperly allowed Flint to testify about a discussion he had with Appellant. However, trial counsel did not object to this testimony; he objected only to the playing of Flint's videotaped statement. "The failure to make a timely and specific objection is treated as a waiver." Seabrooks v. State, 251 Ga. 564, 567 (1) (308 SE2d 160) (1983). Accordingly, Appellant has not preserved this issue for appeal. See id.

10

Second, Appellant contends that the court erred by admitting the videotape of Flint's statement without proper authentication. A "videotape is authenticated by showing it is a fair representation of the object, scene, or person depicted," and any witness familiar with the subject depicted can authenticate a videotape. Walthall v. State, 281 Ga. App. 434, 441 (2) (b) (636 SE2d 126) (2006). At trial, Flint acknowledged that the State had a videotape of his interview with Cobb County detectives, identified himself in the video, and admitted that the date on the video was consistent with the date he was interviewed. See id. At the new trial hearing, Appellant did not present any evidence to show that the videotape was not a fair representation or had been altered. The Court finds that Flint's testimony sufficiently authenticated the videotaped statement.

Third, Appellant asserts that the court erred by failing to give the jury a limiting instruction regarding the use of the videotaped statement for impeachment purposes only. Even assuming such an instruction would have been proper, Appellant never requested a limiting instruction. Therefore, Appellant can show no error. Herring v. State, 277 Ga. 317, 319 (3) (588 SE2d 711) (2003) ("Limiting instructions must be requested in order for the failure to

11

instruct to be erroneous.").

5. Appellant argues that the trial court erred by not giving the jury a charge on "assault" as it related to the offense of aggravated assault. Because Appellant failed to object to the court's jury instructions at trial, we review this enumeration only for "plain error." See Scott v. State, 290 Ga. 883 (4) (725 SE2d 305) (2012). The record reflects that the court charged the jury on the offenses of aggravated assault with intent to commit murder, aggravated assault with intent to rob, and aggravated assault with a deadly weapon. The court provided the statutory definition of simple assault when charging on aggravated assault for these offenses. See OCGA § 16-5-20. Therefore, there was no error. Johnson v. State, 289 Ga. 650 (5) (715 SE2d 99) (2011) (aggravated assault charge was sufficient because it covered the fundamentals of simple assault).

Judgment affirmed. All the Justices concur.


Decided March 2, 2015.

Murder. Clayton Superior Court. Before Judge Benefield.

Stephenson Law Group, Pamela S. Stephenson, Whatley & Associates, Lynn H. Whatley, for appellant.

12

Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney, Samuel S. Olens, Attorney Geneal, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General, for appellee.