303 Ga. 192
FINAL COPY

S17A1402.  MORRIS v. THE STATE.

GRANT, Justice.

Appellant Willie Morris was found guilty of felony murder and other crimes in connection with the July 2004 shooting death of Fabian Miller. Morris now appeals, asserting various evidentiary and jury instruction errors, ineffectiveness of his trial counsel for several reasons, and that the trial court failed to properly exercise its discretion as the thirteenth juror in denying his motion for a new trial.  Finding no error, we affirm.[1]

---

[1] The murder was committed on July 26, 2004.  Morris was indicted by a Fulton County grand jury for malice murder, felony murder based on aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony. At the conclusion of a trial held from August 27 to 31, 2007, a jury found Morris not guilty of malice murder but guilty of all other counts.  On September 18, 2007, the trial court sentenced Morris to life imprisonment for felony murder, merged the aggravated assault count, and added a consecutive five years to serve for possession of a firearm during the commission of a felony.

Morris filed a timely motion for new trial on October 1, 2007, which was subsequently amended by his new counsel on August 17, 2011 and September 16, 2011.  A hearing was not held on the motion until January 22, 2013, and the motion was denied, as amended, on October 2, 2013.  Morris filed a timely notice of appeal on October 28, 2013, but the case was not docketed in this Court until April 11, 2017 for the August 2017 term and thereafter submitted for a decision on the briefs.

## I.

Viewed in the light most favorable to the jury's verdict, the evidence at trial showed that on the evening of July 26, 2004, Willie Morris discovered that his bedroom door had been kicked in and $200 was missing. There were no signs of forced entry elsewhere in his apartment. Morris believed that his roommate, Fabian Miller, had stolen the money.

Morris exited his apartment and saw Miller arriving in the complex in a vehicle driven by O. J. Thomas and also occupied by another passenger, Deondray Little, who resided at the same apartment as Morris and Miller. Thomas remained in the car, while Miller and Little got out and began traversing a walkway that led around to the back of the apartment building. Miller and Little began talking to some other people who were hanging out beside the apartment building when Morris came around the corner of the building and confronted Miller about the stolen money. Words were exchanged, and witnesses heard Morris say to Miller "I thought we were homeboys." Morris then shot Miller in the abdomen and ran away. Miller managed to get back in the car, and Thomas drove him to the gas station they had just come from because they had seen a police officer there. Although Thomas was able to get the attention of the officer, who tried to assist, Miller

died from the gunshot wound within minutes. Detective Michael Willis arrived at the gas station, observed the gunshot wound in Miller's lower right abdomen, and found $201 in cash and various other items on Miller's person—but no gun.

The next day, Morris called Detective Willis's office and said that he did not mean to shoot Miller in the stomach; he only meant to shoot him in the leg. Morris did not mention self-defense or anything about Miller having or reaching for a gun at that time. Two days after the shooting, Morris also called Miller's mother and said that he did not mean to kill Miller and meant only to shoot him in the leg. Again, Morris made no mention of self-defense or Miller having or reaching for a gun. Morris also called the Atlanta Police Department and said that he meant to shoot Miller in the leg. On August 2, Morris turned himself in to Atlanta Police. Morris gave a statement, claiming for the first time that he shot Miller in self-defense because it appeared that Miller was reaching for a gun. Morris claimed that when he came outside to ask Miller about the money, Miller said "Y'all f n*****s going to stop playing with me," and then reached toward his left hip, leading Morris to believe that Miller was reaching for a gun and causing Morris to shoot Miller in self-defense.

Morris testified at trial that he had his gun with him because he had been robbed and jumped in the past. Morris also testified that he had approached Miller to ask what happened regarding his broken-into room and stolen money. According to Morris, he was in fear for his life when Miller reached toward his hip because he knew what Miller "was capable of." Morris again stated that he was trying to shoot Miller in the leg, and also that he was unaware that a single shot could be fatal. Other defense witnesses testified as to Morris's good character. Several witnesses for the State, on the other hand, testified that they did not see Miller reach for a gun before the shooting or see him with a gun at any point that evening.

Although Morris has not challenged the sufficiency of the evidence supporting his convictions, we have independently examined the record according to our usual practice in murder cases and conclude that the evidence admitted at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Morris was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

II.

Morris asserts that the trial court erred in preventing the defense from questioning Little on cross-examination about Miller's reputation for violence and carrying a gun, in refusing to bring Little back into court for further examination by Morris to develop his justification defense, and in denying Morris's motion for a short continuance to get Little back into court to testify. We find no reversible error as to any of these contentions.

In general, "a murder victim's reputation for violence is irrelevant and inadmissible in criminal proceedings." *State v. Hodges*, 291 Ga. 413, 416 (728 SE2d 582) (2012).[2] But a murder victim's reputation for violence "may be offered as evidence by the accused upon the accused making a prima facie showing that the victim was the aggressor and was assaulting the accused, who was acting to defend himself." Id. (citing *Woods v. State*, 269 Ga. 60, 63 (495 SE2d 282 (1998)). "If such showing is made, evidence of the victim's reputation for violence is then admissible to corroborate the accused's story." Id.

---

[2] Because Morris was tried prior to 2013, our old Evidence Code and the cases applying it are controlling.

Little was only the second witness called to testify by the State, and the defense had not yet even begun establishing a prima facie case of self-defense. The trial court, therefore, properly prevented Little from being questioned about Miller's reputation for violence and carrying a gun at that point in trial.

At the conclusion of Little's testimony during the State's case-in-chief, the defense stated "We reserve the right to recall this witness, your honor," and the trial judge responded "All right. Mr. Little. You are going to be on call still." There is no support in the record, however, for Morris's enumeration of error that the trial court refused to bring Little back into court for further examination by Morris to develop his justification defense. The closest semblance of any such refusal was the trial court's denial of Morris's motion for a continuance to get Little back into court to testify, which Morris enumerates as a separate error. But "[w]hether to grant a motion for continuance is entirely within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Carter v. State*, 285 Ga. 394, 398 (677 SE2d 71) (2009) (punctuation omitted).

A fundamental flaw in all of Morris's contentions regarding the testimony he hoped to elicit from Little is that Morris has failed to show what that testimony would have been. See OCGA § 17-8-25 (application for

continuance due to absence of witness must show that witness's testimony is material).  Presumably, Morris believes Little would have testified that Miller had a reputation for violence and for carrying a gun, and that Miller had a prior firearm possession conviction.  Morris never made any proffer as to the substance of that testimony, however, nor did he call Little to testify at the hearing on Morris's motion for a new trial.  See, e.g., *Leston v. State*, 236 Ga. App. 340, 341 (512 SE2d 55) (1999) (no abuse of discretion in denying continuance because defendant failed to substantiate his claim that absent witness would have provided material testimony by failing to call that witness at motion for new trial hearing); see also *Wells v. State*, 281 Ga. 253, 255 (637 SE2d 8) (2006) (rejecting ineffective assistance claim based on failure to request continuance to locate potential exculpatory witness because defendant "did not make any proffer whatever to show that the testimony of such witness[] would have been relevant and favorable, and thus, would have resulted in a different verdict").  Morris cannot obtain a new trial based on his speculation about what else Little would have testified to.

Moreover, the jury heard evidence of Miller's reputation for violence during Morris's testimony and also saw Miller's certified weapons conviction, which was admitted over the State's objection, so any additional testimony

from Little on these points would have been cumulative. See *Nix v. State*, 280 Ga. 141, 144 (625 SE2d 746) (2006) (no reversible error because excluded testimony was cumulative of other evidence introduced, including defendant's statement). Finding no abuse of discretion in this regard, we reject Morris's contentions.

## III.

Morris next contends that the trial court erred in denying his request to question two witnesses about Morris's state of mind and in not allowing the defense to question another witness about one of Miller's tattoos.

The trial court sustained the State's objections to the defense asking one witness: "Had you ever had the opportunity to see [Morris] after he had been in a bad situation?"; and asking the other witness: "In 2003, did you have the opportunity to see Mr. Morris after an unusual situation?" Again, Morris has failed to make any proffer as to what he claims these witnesses would have testified to, and he called neither witness to testify at the hearing on his motion for a new trial. He has failed to show any abuse of discretion, therefore, in these evidentiary rulings by the trial court.

Morris also argues that the trial court erred in preventing him from eliciting testimony that Miller's "MOB" tattoo, visible in a photograph of his

body, meant "money over b****es," because that would have corroborated Morris's justification defense by showing how highly Miller valued money. But we see little relevance in evidence about how highly Miller valued money, except that, if anything, it supports the State's theory of motive—that Morris killed Miller because Miller stole money from him. The trial court, therefore, did not abuse its discretion in this regard either. See *Lee v. State*, 274 Ga. 707, 707 (559 SE2d 475) (2002) (no abuse of discretion in excluding testimony that victim was looking into cars the morning of the day that defendant killed him because other evidence showed victim was stealing defendant's car when victim was shot, it was not relevant to justification defense, and it would have reflected negatively on victim's character).

IV.

Morris contends that several pre-autopsy photographs of Miller that were tendered by the State and admitted into evidence outside of the jury's presence were not properly admitted, and therefore it was error to allow the photographs to go into the jury room during deliberations. The record shows that after the medical examiner's testimony, during which the complained-of photographs were authenticated, there was a recess for lunch, and before the jury returned, the State announced that it did not remember if the exhibits were actually

tendered, so it tendered them at that time. The defense replied that the photographs "were admitted with no objection," and the trial court replied, "All right. They are admitted." The State then asked if it should re-tender the exhibits in the jury's presence, but the defense declined, stating they were already admitted.

Morris was tried before the plain error doctrine became part of our Evidence Code, see OCGA § 24-1-103 (d); *Cain v. State*, 300 Ga. 614, 615 (797 SE2d 466) (2017), so his "failure to make a timely and specific objection is treated as a waiver." *Heard v. State*, 296 Ga. 681, 686 (769 SE2d 917) (2015) (punctuation and citation omitted). Not only did the defense not object at the time the exhibits were admitted or later when they were sent to the jury for deliberations, it affirmatively waived any objection. Accordingly, Morris has not preserved this issue for appeal.

V.

Morris asserts that the trial court committed multiple errors in its jury charges: giving a sequential lesser included jury instruction; giving improper charges as to justification, impeachment, and good character; and failing to give an accident charge or to instruct the jury on how to enter a finding of the

lesser included crime of voluntary manslaughter on the verdict form.  Morris, however, raised none of these complaints at trial.

Under OCGA § 17-8-58, we review a jury instruction to which no objection was made at trial only for plain error.  To meet the standard for plain error, Morris must show an error: (1) that has not been "affirmatively waived"; (2) that is "clear and obvious"; and (3) that affected his "substantial rights." *State v. Kelly*, 290 Ga. 29, 33 (718 SE2d 232) (2011); see OCGA § 17-8-58 (b).  In other words, if an alleged error regarding a jury instruction has not been affirmatively waived, then "the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings."  *Kelly*, 290 Ga. at 33 (punctuation and citation omitted).  If these standards of the plain-error test are met, we may exercise our discretion to reverse "'if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Id. (quoting *Puckett v. United States*, 556 U.S. 129, 135 (129 SCt 1423, 173 LE2d 266) (2009)).

A. *Sequential lesser included charge*.

Morris argues that the following instruction given by the trial court amounted to an improper sequential charge prohibited by *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992):

I charge you that you are not required to reach unanimous agreement on a greater offense before considering lesser included offenses. You must, however, consider the greater offense before considering any lesser included offenses.

After consideration of all the evidence, before you would be authorized to return a verdict of guilty of malice murder or felony murder, you must first determine whether mitigating circumstances, if any, would cause the offense to be reduced to voluntary manslaughter.

In *Edge*, we held that "[a] sequential charge requiring the jury to consider voluntary manslaughter *only* if they have considered and found the defendant not guilty of malice murder and felony murder is not appropriate where there is evidence that would authorize a charge on voluntary manslaughter." 261 Ga. at 867 (emphasis in original). Morris teases out the trial court's instruction that "You must, however, consider the greater offense before considering any lesser included offenses," in an attempt to persuade us to consider that language to the exclusion of the remaining charge and find that an improper sequential charge was given. But instructing the jury that it must consider the greater offense before considering any lesser included offense is not equivalent to instructing them that they may consider the lesser included offense only if they have considered *and found the defendant not guilty of* the greater offense. In *Armstrong v. State*, 277 Ga. 122, 122 (587 SE2d 5) (2003), we noted: "A

trial court may instruct a jury to consider a greater offense before it considers a lesser offense. A trial court may not, however, instruct the jury that it must reach a unanimous verdict on the greater offense before considering the lesser offense." (citing *Yeager v. State*, 274 Ga. 216, 219 (552 SE2d 809) (2001) and *Camphor v. State*, 272 Ga. 408, 415 (529 SE2d 121) (2000)).

Indeed, Morris's selective quotation from the jury instructions omits entirely the instructions, "you are not required to reach unanimous agreement on a greater offense before considering lesser included offenses," and "before you would be authorized to return a verdict of guilty of malice murder or felony murder, you must first determine whether mitigating circumstances, if any, would cause the offense to be reduced to voluntary manslaughter." There is no "exact formula" that trial courts must follow in this context "so long as the charge as a whole ensures that the jury will consider whether evidence of provocation and passion might authorize a verdict of voluntary manslaughter." *Elvie v. State*, 289 Ga. 779, 781 (716 SE2d 170) (2011) (punctuation and citation omitted). The charge here did just that, and so we find no error, plain or otherwise, in this jury charge.

*B. Justification, impeachment, and good character charges.*

Morris also contends that the trial court improperly instructed the jury on justification, impeachment, and good character. Each of these contentions fails.

The trial court instructed the jury on justification rather exhaustively— instructions that span roughly five pages of the trial transcript. These instructions closely tracked the Georgia Suggested Pattern Jury Instructions, including the entirety of the charge for "Justification; Use of Force in Defense of Self or Others," tailored only to the extent necessary to comport with the facts of this case. The trial court instructed the jury on the State's burden to disprove the affirmative defense beyond a reasonable doubt, the reasonable belief necessary to justify self-defense by use of force, including the use of deadly force, and when the jury has a duty to acquit based on justification. Because these instructions "adequately covered justification and the State's burden of proof," the trial court's justification charge was not erroneous, much less plainly so. *Dugger v. State*, 297 Ga. 120, 125-126 (772 SE2d 695) (2015) (punctuation and citation omitted).

As to the impeachment instructions, Morris complains that the trial court omitted the portion of the pattern charge on impeachment informing jurors that

crimes of dishonesty and making false statements are proper for impeachment. He also claims that although the trial court instructed the jury that a felony conviction may be used for impeachment, it failed to define felonies or otherwise inform the jury that Morris had introduced felony convictions for impeachment purposes in any event. But during the charge conference, the defense affirmatively requested removal of the parts of the pattern impeachment charge that he now complains were omitted. Morris, therefore, affirmatively waived his contention that the trial court erroneously omitted those portions of the pattern impeachment charge, and thus fails to satisfy the plain error standard as to that contention. And there is no requirement that trial courts define which crimes are felonies for impeachment purposes. Cf. *Carver v. State*, 262 Ga. 723, 723 (425 SE2d 657) (1993) (trial court not required to define "forcible felony" because it "extensively charged on justification and self-defense" and "the applicable principles [were] fairly covered by the charge as given"); *Holmes v. State*, 210 Ga. App. 118, 118 (435 SE2d 492) (1993) (no error in failing to instruct jury as to definition of "felony"). Given the absence of such a requirement, its omission cannot be clearly erroneous.

As to the good character charge, the trial court's instructions provided all of the information that we have specifically set forth as a "proper good

character charge," almost verbatim. *State v. Hobbs*, 288 Ga. 551, 553 (705 SE2d 147) (2010). Morris's argument that the trial court's good character charge was improper, therefore, is also meritless.

### C. Instructions on accident and entry of lesser included offense on verdict form.

Morris contends that the trial court wholly failed to give an accident charge or to instruct the jury on how to enter a finding on the lesser included crime of voluntary manslaughter on the verdict form. These contentions, like Morris's other complaints regarding the jury instructions, fail.

Morris's only defense was self-defense. He testified that he intentionally shot Miller in self-defense, but that he did not mean for the shot to kill Miller. There was no evidence from which a jury could infer that the gun was fired as the result of an accident. Under these facts, no accident charge was warranted. See *Dolensek v. State*, 274 Ga. 678, 680 (558 SE2d 713) (2002); *Shorter v. State*, 270 Ga. 280, 280 (507 SE2d 757) (1998).

Morris's argument that the trial court should have instructed the jury on how to enter a verdict on the lesser included crime of voluntary manslaughter on the verdict form also fails. The trial court clearly instructed the jury that before it would be authorized to return a verdict of guilty of malice murder or

felony murder, it must first determine whether mitigating circumstances should cause the offense to be reduced to voluntary manslaughter, and that the burden is on the State to prove beyond a reasonable doubt that there was no such mitigation. The trial court also instructed the jury on the definition and legal standard for voluntary manslaughter. Near the end of its instructions, the court also gave the suggested pattern charge on "Verdict; Generally," instructing the jury that if they did not believe that the defendant was guilty of an offense or if they had any reasonable doubt as to the defendant's guilt, "then it would be your duty to acquit the defendant in which event the form of your verdict as to that offense would be we the jury find the defendant not guilty." The verdict form itself lists "Voluntary Manslaughter (as a lesser offense of Malice Murder and/or Felony Murder)" first, with each of the other counts listed thereafter and an identical blank next to each offense for the jury to write its verdict. The jury drew a line in the space provided next to "Voluntary Manslaughter," wrote "Not guilty" in the space provided next to "Malice Murder," and wrote "Guilty" in the spaces provided next to the remaining offenses.

The jury instructions, read and considered as a whole, show that the trial court clearly instructed the jury on the presumption of innocence, the State's burden of proof, the requirement to determine whether mitigating evidence

warranted a reduction to voluntary manslaughter, the possible verdicts that could be returned, and how the verdicts should be entered on the printed form. See *Brown v. State*, 283 Ga. 327, 329-330 (658 SE2d 740) (2008); *Brinson v. State*, 276 Ga. 671, 673 (581 SE2d 548) (2003). And the verdict form itself would not "mislead jurors of reasonable understanding," as demonstrated by their clear consideration of each of the offenses listed, including voluntary manslaughter. *Brown*, 283 Ga. at 329 (punctuation and citation omitted); see also *Buttram v. State*, 280 Ga. 595, 599 (631 SE2d 642) (2006) ("It is not error to refuse to include voluntary manslaughter on the verdict form where the court instructs the jury on voluntary manslaughter.") (citing *Brinson*, 276 Ga. at 673). Morris, therefore, has failed to show any error in the jury charges.

## VI.

Morris next contends that his trial counsel was ineffective for failing to object to the previously discussed autopsy photographs going into the jury room or to misstatements of law during the State's closing argument, and for failing to request a jury charge on accident. We disagree.

To prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's performance was professionally deficient and that such deficient performance resulted in prejudice to the defendant. *Strickland*

*v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010).  To satisfy the first prong, deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U.S. at 687-688.  This requires a defendant to "overcome the 'strong presumption' that counsel's performance fell within a 'wide range of reasonable professional conduct,' and that counsel's decisions were 'made in the exercise of reasonable professional judgment.'"  *Simmons v. State*, 299 Ga. 370, 375 (788 SE2d 494) (2016) (citations omitted).  To satisfy the second prong, prejudice, one must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different.  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong."  *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).  We review each of Morris's claims of ineffectiveness below.

As previously discussed, the autopsy photographs were properly provided to the jury for deliberations and no accident charge was warranted. Morris, therefore, cannot show deficient performance on these two points, and his ineffective assistance claims fail as to each.

Morris also contends that the State repeatedly argued in its closing argument that this case was not about Morris's good character and that he couldn't rely on his good character or his claim of self-defense to avoid responsibility for his actions, that these statements were misstatements of the law, and that his trial counsel was ineffective for failing to object to them. But "[r]easonable decisions as to whether to raise a specific objection are ordinarily matters of trial strategy and provide no ground for reversal," *Ballard v. State*, 297 Ga. 248, 254 (773 SE2d 254) (2015) (punctuation and citation omitted), and "'[a] prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion[.]' Within that wide latitude, a prosecutor may 'comment upon and draw deductions from the evidence presented to the jury.'" *Booth v. State*, 301 Ga. 678, 688 (804 SE2d 104) (2017) (quoting *Johnson v. State*, 296 Ga. 504, 508 (769 SE2d 87) (2015) and *Scott v. State*, 290 Ga. 883, 885 (725 SE2d 305) (2012)). Contrary to Morris's claims, the State's comments were within the bounds of permissible

closing argument, and his trial counsel, therefore, did not perform deficiently in failing to object to those comments. *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010) (counsel not ineffective for failing to make meritless objection). Accordingly, Morris's claims of ineffective assistance of trial counsel fail.

## VII.

Morris lastly contends that the trial court failed to properly exercise its discretion as the thirteenth juror in denying his motion for a new trial on the so-called "general grounds." OCGA § 5-5-20 provides that "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury," and section 5-5-21 provides that "[t]he presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." The trial court's order denying Morris's motion for new trial states that "after careful consideration of the submissions and arguments of the parties, the Motion for New Trial is hereby DENIED." Although the order does not explicitly state that the court exercised "its broad discretion as the thirteenth juror" in deciding

Morris's motion, "it is well established that this Court must presume that the trial judge knew the rule as to the necessity of exercising [her] discretion, and that [s]he did exercise it." *Butts v. State*, 297 Ga. 766, 771-772 (778 SE2d 205) (2015) (punctuation and citation omitted). "[W]e cannot assume, in the absence of positive evidence to the contrary, that the judge knowingly declined to exercise [her] discretion." Id. There being no indication that the trial court failed to properly exercise its discretion as the thirteenth juror, Morris's final enumeration of error fails.

## VIII.

This is yet another criminal case with an inordinate delay between the defendant's trial and his direct appeal. See *Owens v. State*, 303 Ga. __ (__ SE2d __) (2018); see also *Byron v. State*, 303 Ga. 218 (__ SE2d __) (2018). Morris's motion for new trial was pending in the superior court for over five years before it was heard in the trial court, and it was not ruled on for six years from the date of filing. During the interim, Morris wrote two letters to the clerk of the superior court inquiring about the status of his case. And after the motion was finally decided and the notice of appeal filed, the case could not be docketed in this Court for over three-and-a-half more years because the record provided by the superior court was incomplete—and it remained so despite no

less than six contacts from this Court informing the superior court clerk that the record was incomplete.  During that time, Morris wrote to the clerk of the superior court a third time to inquire about the status of his case.  Morris has enumerated no error arising from these delays, and so they do not affect the outcome of this appeal.  But here, as in too many prior cases, we disapprove of the extreme delays in this appeal.  We trust that the rule that will emerge from our directive in *Owens* will help eliminate these sorts of unjustified delays.  See id. at __.

Judgment affirmed.  All the Justices concur.

Decided March 5, 2018.

Murder. Fulton Superior Court. Before Judge Lane.

John W. Kraus, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Joshua D. Morrison, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.