303 Ga. 218
FINAL COPY

S17A1555.  BYRON v. THE STATE.

NAHMIAS, Justice.

Appellant Reno Byron was found guilty of malice murder and other crimes in connection with the shooting death of Virgil White.  He claims that the evidence presented at his trial was insufficient to support the jury's guilty verdicts and that his trial counsel provided ineffective assistance.  Neither of those claims has merit, so we affirm.[1]

    1.    (a)    Viewed in the light most favorable to the verdicts, the

---

[1] The victim was killed on July 4, 1999.  On September 7, 1999, a Tift County grand jury indicted Appellant for malice murder, felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  Appellant's trial began on March 21, 2000, and the next day the jury found him guilty of all charges except possession of a firearm by a convicted felon, which was nolle prossed.  The trial court sentenced Appellant to serve life in prison for malice murder and a consecutive five years for the firearm conviction; it merged the remaining guilty verdicts.  (Although the court should have vacated the felony murder count, this mistake of nomenclature had no effect on the sentence imposed, see Drews v. State, 303 Ga. __ (__ SE2d __) (2018).)
        On April 21, 2000, Appellant filed a motion for new trial, which was amended by his new counsel on March 18, 2014.  After an evidentiary hearing, the trial court denied the motion on October 28, 2014.  Appellant filed a timely notice of appeal directed to the Court of Appeals, but the case was not docketed there until February 17, 2017.  The Court of Appeals transferred the case to this Court on March 15, 2017; the case was then docketed in this Court for the August 2017 term and submitted for decision on the briefs.

evidence presented at trial showed the following. On the night of July 3, 1999, White was at a club in Tifton with his brother Jason and three other friends. At 1:30 a.m. they attempted to leave the club, but Jason's truck was blocked in by other cars in the parking lot. Appellant, his friend Ricky Jackson, and five others were sitting on the back of a car next to the truck. As Jason attempted to maneuver the truck out, Jackson put his feet on the truck. Jason asked Jackson to take his feet off, but Jackson refused. Jason then got out of his truck, and a fight began between Jason and Jackson.

White and Jason's friends attempted to intervene, and Appellant shot his Tec-9 pistol in the air in an attempt to stop the fighting. Jackson grabbed the Tec-9 from Appellant and began chasing Jason around. Jackson shot at but missed Jason, who ran away and down the street, with Jackson following and continuing to shoot until the gun jammed. White shot his gun in the air to try to stop Jackson from chasing his brother. Appellant then approached White from the back and shot at him with another gun, hitting him five times.[2] White

---

[2] Three witnesses saw Appellant shoot at White. One of White and Jason's friends testified that Appellant came "from behind Virgil and just started shooting"; another testified that he saw Appellant shoot "two times and that's when Virgil . . . fell down"; and Appellant's cousin testified that she saw Appellant "[s]hooting . . . [t]owards Virgil."

2

died from a gunshot that entered his back and struck his heart and lung. Later investigation showed that White was killed with a .380-caliber gun. Appellant was seen earlier that day carrying both a Tec-9 and a .380-caliber gun.

Appellant did not testify at trial. His defense was that he was not the shooter; the defense suggested that Jackson shot White, although Jackson testified and denied that.

(b) Appellant contends that the evidence summarized above was not legally sufficient to support his convictions. We disagree. On the day of the shooting, a witness saw Appellant carrying the kind of gun that killed the victim, and three other witnesses saw Appellant shoot at the victim, including one who said Appellant shot the victim from behind. This testimony was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of malice murder and possession of a gun during the commission of a felony. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or

3

inconsistencies in the evidence.'" (citation omitted)).[3]

2.      Appellant claims that his trial counsel provided ineffective assistance in four ways.  To succeed on these claims, Appellant "must prove both that [his] lawyer's performance was professionally deficient and that [he was] prejudiced as a result."  Gomez v. State, 301 Ga. 445, 457 (801 SE2d 847) (2017).  See also Strickland v. Washington, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984).  If Appellant fails to prove one element of this test, we need not address the other one.  See Gomez, 301 Ga. at 457.

Appellant's first claim — that his trial counsel failed to adequately prepare for the testimony of a defense witness who was impeached on cross-examination — was not preserved for appellate review, because Appellant did not raise it with new counsel in his amended motion for new trial.  See Gomez, 301 Ga. at 460. His second claim — that trial counsel should have requested a jury charge for a lesser included offense — has been abandoned.  See Supreme Court Rule

---

[3] Appellant also contends that the evidence did not support the guilty verdicts for felony murder and aggravated assault, but that contention is moot because he was not convicted of or sentenced for those crimes.  See Threatt v. State, 293 Ga. 549, 549-550 n.2 (748 SE2d 400) (2013). In addition, Appellant invokes the "general grounds" for evidence review, arguing that the guilty verdicts were contrary to "principles of justice and equity," OCGA § 5-5-20, and "decidedly and strongly against the weight of the evidence," OCGA § 5-5-21.  However, as an appellate court, "[o]ur review is limited to the legal sufficiency of the evidence."  Plez v. State, 300 Ga. 505, 507 n.2 (796 SE2d 704) (2017).

22 ("Any enumerated error not supported by argument or citation of authority in the brief shall be deemed abandoned. . . ."). In his brief to this Court, Appellant merely mentions that he raised this contention in his motion for new trial, but he offers no argument to support the contention; he does not even identify what lesser included offense he believes trial counsel should have requested.

Appellant's third claim is that his trial counsel failed "to conduct an investigation into the use of guns" in the case. Appellant says that showing which guns were used and by whom around the time of the fatal shooting was an important part of the trial. We do not disagree, and neither did trial counsel. He called and questioned multiple witnesses about the guns used and who used them. Appellant has not shown what further investigation about the guns "'would have revealed or how any additional information would have improved [his] position.'" Brown v. State, 301 Ga. 728, 735 (804 SE2d 16) (2017) (citation omitted). Accordingly, he has failed to prove that he was prejudiced by the alleged failure of counsel to investigate the use of guns. See id. at 735-736 ("To show prejudice on a claim that trial counsel failed to adequately investigate the case, [the defendant] had to at least make a proffer as to what

5

additional investigation would have uncovered, and not merely speculate that such information exists and would have made a difference." (citation and punctuation omitted)).

Finally, Appellant claims that his trial counsel should have "asserted a defense that involved justification" because there was testimony that White was armed. To prove that counsel performed deficiently in making such a decision about trial strategy, Appellant must show that the decision was "so patently unreasonable that no competent attorney would have chosen [that path]." Gomez, 301 Ga. at 459 (citation and punctuation omitted). At the motion for new trial hearing, Appellant testified that he consistently told his trial counsel that he did not shoot White. In fact, even at the hearing, Appellant maintained his position that he did not shoot White. In light of Appellant's position and the evidence presented at trial, it was reasonable for trial counsel to focus the defense on the theory that Appellant was not the shooter. See Morrison v. State, 300 Ga. 426, 428 (796 SE2d 293) (2017). For these reasons, Appellant has failed to show that his trial counsel was ineffective.

3. As outlined in footnote 1 above, this is yet another criminal case with an inordinate delay between the trial and the direct appeal reaching this

court.  See <u>Owens v. State</u>, 303 Ga. __ (__ SE2d __) (2018); <u>Morris v. State</u>, 303 Ga. 192 (__SE2d__) (2018).  Appellant's trial counsel apparently died in 2004, but the record shows no activity in the case whatsoever in the 14 years from April 2000 until March 2014.  And after the motion for new trial was finally decided and the notice of appeal was filed, the case sat in the superior court for over two more years.  Appellant has enumerated no error arising from the delay, and it therefore does not affect the outcome of this appeal.  See <u>Owens</u>, 303 Ga. at __.  Nevertheless, while we appreciate the efforts of those who got this case moving, we express our disapproval of the neglect shown this case for so long.  We trust that the rule that will emerge from <u>Owens</u> will help eliminate these sorts of unjustified delays.  See id. at __.

<u>Judgment affirmed.  All the Justices concur.</u>

Decided March 5, 2018.

Murder. Tift Superior Court. Before Judge Cross.

<u>Michael W. Gowen</u>, for appellant.

<u>C. Paul Bowden, District Attorney, Kevin E. Hutto, Robert A. Rogers, Jennifer D. Hart, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, S. Taylor Johnston, Assistant Attorney General</u>, for appellee.