In the Supreme Court of Georgia

Decided:  March 2,  2015

S14A1329. THE STATE v. MOBLEY.

BLACKWELL, Justice.

Ricci Mobley was tried by a Fulton County jury and convicted of murder and several other crimes, all in connection with the killing of Bryan Tinch. On a motion for new trial, however, the trial court set aside those convictions, reasoning that Mobley was denied the effective assistance of counsel at trial when his lawyers asked successfully for a jury charge on mutual combat, a charge that impaired his defense of justification. The State appeals, and we conclude that Mobley is not entitled to a new trial upon this ground. Accordingly, we reverse the order awarding a new trial to Mobley, and we reinstate the judgment of conviction.[1]

---

[1] Tinch was killed on July 7, 2009. Mobley and a co-defendant were indicted on September 29, 2009, and each was charged with malice murder, felony murder, two counts of aggravated assault, unlawful possession of a firearm during the commission of a felony, and unlawful possession of a pistol by a person under the age of eighteen. Mobley and his co-defendant were tried together, beginning on May 9, 2011. The jury returned its verdict four days later, finding Mobley not guilty of malice murder and guilty on all of the other counts. His co-defendant was found guilty only of unlawful possession of a pistol by a person under the age of eighteen. Mobley was sentenced to imprisonment for life for felony murder,

To prevail on his claim that he was denied the effective assistance of counsel, Mobley had to prove that the performance of his lawyers was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyers was deficient, Mobley had to show that they performed their duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). This is no easy showing. As the United States Supreme Court has explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission

a concurrent term of imprisonment for twenty years for an aggravated assault upon Tinch's brother, a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony, and a concurrent term of imprisonment for twelve months for unlawful possession of a pistol by a person under the age of eighteen. The remaining count of aggravated assault merged with the felony murder. Mobley timely filed a motion for new trial on May 16, 2011, and he amended it on November 29, 2012. The trial court granted the motion on May 30, 2013. The State timely filed a notice of appeal on June 27, 2013, and the case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Strickland, 466 U. S. at 689-690 (III) (A) (citations omitted). See also Humphrey v. Nance, 293 Ga. 189, 191 (II) (A) (744 SE2d 706) (2013). To these ends, the law recognizes a "strong presumption" that counsel performed reasonably, Strickland, 466 U. S. at 689 (III) (A), and Mobley bore the burden of overcoming this presumption. See id. To carry his burden, Mobley had to show that no reasonable lawyer would have done what his lawyers did or would have failed to do what his lawyers did not, see Nance, 293 Ga. at 192 (II) (A) (1), or put another way, that his lawyers "made errors so serious that [they were] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U. S. 86 (IV) (131 SCt 770, 178 LE2d 624) (2011) (citation and punctuation omitted). And to carry that burden, Mobley had to show these things by competent evidence, for a silent or ambiguous record is not sufficient to overcome the strong presumption of

3

reasonable performance. Shaw v. State, 292 Ga. 871, 874 (3), n. 5 (742 SE2d 707) (2013).

Even when a defendant has proved that the performance of his lawyers was deficient in a constitutional sense, he also must prove prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). But a court is not required to "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U. S. at 697 (IV). In all, the burden of proving a denial of the effective assistance of counsel is a heavy one. See Kimmelman, 477 U. S. at 382 (II) (C). See also Richter, 562 U. S. at __ (IV). Whether the defendant has carried his heavy burden is a question committed in the first instance to the trial court, and even on appeal, we defer to its findings of fact unless clearly erroneous. See Perkins v. Hall, 288 Ga. 810, 812 (II) (708 SE2d 335) (2011). We owe no deference, however, to its conclusions of law, and we apply the law ourselves to the material facts of a case. See id. In this case, we conclude that Mobley has failed to carry his burden.

4

The trial court summarized the evidence presented at trial as follows:

[Mobley] shot and killed Bryan Tinch in broad daylight on 7 July 2009 — this fact was uncontested at trial. Earlier that day, [Mobley] and Tinch had become embroiled in a heated argument. Just prior to the shooting, Tinch and his brother Branden walked by [Mobley's] grandmother's yard where [Mobley] was sitting with his friends Chaze Scott and Laburk Styles. As Tinch and his brother passed by, Tinch and [Mobley] renewed their argument. Tinch, who was far larger than [Mobley], stepped towards the yard, reached towards his pants and, in the words of his brother, "did the one-on-one, that means he'll fight you one-on-one," "pull[ing] up his pants like he was fixing to run up in the yard." [Mobley] backed away, and Scott handed him a gun. [Mobley] fired an initial shot either into the ground or into the air — the exact direction was unclear, other than that it was a warning shot *not* fired at Tinch — and then fired two or three more shots as Tinch and his brother ran back towards their house. Tinch was hit once in the chest and died from his wound.

(Emphasis in original.) On the motion for new trial, the trial court decided that Mobley had been denied the effective assistance of counsel because his lawyers had persuaded the trial court to give a jury charge on mutual combat.[2] There was no evidentiary basis for such a charge, the trial court explained, because there was no evidence at trial that Tinch was armed with a deadly weapon. And in any event, the trial court reasoned, the charge on mutual combat impaired the defense

_____

[2] Different judges presided at trial and the hearing on the motion for new trial.

of justification — which, the trial court found, was the sole defense urged at trial by Mobley — by instructing that a person engaged in mutual combat may claim justification only if he first withdraws from the mutual combat and communicates that withdrawal to the other combatant. Because no evidence supported the charge on mutual combat, and because the charge impaired the sole defense, it was unreasonable for the lawyers to have asked for the charge, the trial court concluded, rendering their performance deficient in this respect. As to prejudice, the trial court determined that Mobley had shown a reasonable probability that the charge on mutual combat affected the outcome of the trial, inasmuch as the case on justification was close, and the mutual combat charge impaired the justification defense.

We turn now to the question of deficient performance. To begin, we note that the trial court was wrong to find that justification was the *sole* defense urged by Mobley at trial. A review of the trial transcripts — including the closing arguments of counsel — reveals quite clearly that the defense case was not entirely and exclusively about justification. Although justification certainly was the principal line of defense, Mobley's lawyers also had a fallback position, arguing that, if the killing was not justified, it amounted to only voluntary

6

manslaughter, not murder. Indeed, in the closing arguments, one of those lawyers pointed to evidence that Mobley had been provoked to kill Tinch, noting that sufficient provocation could render a killing only voluntary manslaughter under Georgia law. In particular, the lawyer pointed to evidence that Tinch had threatened Mobley on the day of the killing and essentially had challenged Mobley to a fight. And the trial court charged the jury on voluntary manslaughter as a lesser included offense of murder. The finding that justification was the *sole* defense at trial is clearly erroneous.[3]

The trial court also erred with respect to the significance that it attached to the absence of proof at trial that Tinch was armed with a deadly weapon. According to the trial court, a charge on mutual combat is warranted only upon such proof. Perhaps that is right, but it is not clearly so. As this Court acknowledged only a few years ago, "[t]here is a conflict in the case law with regard to whether there must be evidence that mutual combatants have deadly

---

[3] "A claim that a killing is only voluntary manslaughter is not, strictly speaking, a 'defense' to a murder charge." Lynn v. State, 296 Ga. 109, 113, n. 4 (2) (765 SE2d 322) (2014) (citation omitted). Nevertheless, pursuing a finding of guilt of voluntary manslaughter as an alternative to murder may properly form a part of the defense theory of a case.

weapons in order for the jury to be charged on the law of mutual combat."[4] White v. State, 287 Ga. 713, 723 (4) (c) (699 SE2d 291) (2010) (citations omitted). And in any event, the jury charge requested in this case did not say anything about any requirement that Tinch have been armed with a deadly weapon. To the contrary, Mobley's lawyers asked for, and the trial court gave, an instruction that:

> If you find from the evidence that there was between the defendant and the deceased a mutual combat, that is a mutual intent or a mutual agreement to fight, then you will consider the rules of law concerning mutual combat . . ..
>
> Mutual combat occurs where there is combat between two persons as a result of a sudden quarrel or such circumstances as indicate a purpose, willingness, and intent on the part of both to engage mutually in a fight. It is not essential to execute mutual combat, that blows be struck or shots be fired. There must be a mutual intent to fight or engage in combat. The existence of intent to engage in mutual combat may be establish[ed] by proof of acts and conduct, as well as by proof of an expressed agreement.

So, even if the law of mutual combat properly applies only when both combatants are similarly armed, the jury was told nothing of any such requirement, and as mutual combat was actually charged in this case, the jury could have found mutual combat consistent with the instructions of the court.

---

[4] We do not attempt today to resolve this conflict. For the reasons that follow, the resolution of this case does not require it.

As the trial court noted, such a finding would have come at a cost for Mobley. Specifically, as a part of its charge on mutual combat, the trial court instructed that, if Mobley and Tinch were engaged in mutual combat at the time of the killing:

> [T]hen in order for the killing to be justified . . . it must further appear that the defendant withdrew from the encounter, effectively communicated to the deceased the intent to do so, and the deceased notwithstanding, continued or threatened to continue the use of unlawful force.

See OCGA § 16-3-21 (b) (3). Because the law of justification does not otherwise require such a withdrawal and communication as a predicate to the justified use of force in defense of self, see OCGA § 16-3-21 (a), the charge on mutual combat — to the extent that the jury found that Mobley and Tinch were, in fact, engaged in mutual combat — would have impaired somewhat his justification defense.

Nevertheless, the charge on mutual combat clearly presented a potential benefit for Mobley too. Also as a part of that charge, the trial court instructed the jury:

> If you find that there was a mutual intention on the part of both the deceased and the defendant to enter into a fight or mutual combat and that under these circumstances the defendant killed the deceased,

9

then ordinarily such killing would be voluntary manslaughter, regardless of which party struck the first blow or fired the first shot.

Although the charge on mutual combat may have carried a cost to the justification defense, it presented the benefit of improving the chances that the jury might find Mobley guilty of only voluntary manslaughter, not murder.

Whether the potential upside of a charge is worth its costs is a quintessential question of trial strategy. As we have explained before, "[d]ecisions as to which jury charges will be requested and when they will be requested fall within the realm of trial tactics and strategy. They provide no grounds for [a new trial] unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." Davis v. State, 296 Ga. 126, 131 (3) (765 SE2d 336) (2014) (citation and punctuation omitted). This principle is a settled one. See Madrigal v. State, 287 Ga. 121, 123 (3) (694 SE2d 652) (2010), overruled on other grounds, State v. Kelly, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011); Hill v. State, 284 Ga. 521, 524 (2) (b) (668 SE2d 673) (2008); King v. State, 282 Ga. 505, 507 (2) (a) (651 SE2d 711) (2007); Jackson v. State, 278 Ga. 235, 239 (5) (a) (599 SE2d 129) (2004). Moreover, a strategy that presents alternative defense theories — all of which are

10

better for the defendant than the prosecution theory of the case — generally falls within the broad range of reasonable professional conduct. See Ramsey v. State, 272 Ga. 28, 30 (3) (526 SE2d 842) (2000); Hodges v. State, 260 Ga. App. 483, 485 (2) (580 SE2d 614) (2003), disapproved on other grounds, Schofield v. Holsey, 281 Ga. 809, 812 (II), n. 1 (642 SE2d 56) (2007). More specifically, it ordinarily is not unreasonable for a defense lawyer to seek a charge on voluntary manslaughter as an alternative defense theory in a murder case, in the event that the jury does not accept the primary defense theory. See Thornton v. State, 292 Ga. 87, 89 (4) (734 SE2d 393) (2012). And it usually is not unreasonable in a murder case to request a charge on mutual combat in aid of an instruction on voluntary manslaughter as a lesser included offense. See Sanders v. State, 283 Ga. 372, 375 (2) (c) (659 SE2d 376) (2008). In this case in which the lawyers pursued not only a justification defense, but also voluntary manslaughter as an alternative to murder, it cannot be said that no reasonable lawyer would have asked for the charge on mutual combat, even though it might have impaired to some extent the principal defense of justification.

For these reasons, the trial court erred when it concluded that Mobley's lawyers performed their duties at trial in an objectively unreasonable way.

11

Mobley failed to carry his burden to show deficient performance, and we need not consider the question of prejudice. Because he failed to carry his burden, his claim that he was denied the effective assistance of counsel must fail, and he is not entitled to a new trial upon that ground. The judgment of the trial court to the contrary is reversed.

Judgment reversed and case remanded. All the Justices concur.