303 Ga. 666
FINAL COPY

S18A0528. LEANOS v. THE STATE.

PETERSON, Justice.

Margarita Jean Leanos appeals her convictions for felony murder and other crimes in connection with the killing of a taxi driver, Isaias Tovar-Murillo.[1] Leanos challenges the sufficiency of the evidence used to convict her. She also argues that trial counsel was ineffective for failing to (1) notice that Leanos had been medicated into incompetence, (2) present a cohesive defense theory, (3) object to references to Leanos's character, and (4) request a severance of the gang charges. We affirm because the evidence was sufficient

---

[1] Tovar-Murillo was killed on March 15, 2015. A Hall County grand jury returned an indictment on March 26, 2015, charging Leanos with felony murder predicated on attempt to commit armed robbery, attempt to commit armed robbery, conspiracy to commit armed robbery, and two counts of participation in a criminal street gang. Following an October 2015 trial, the jury found Leanos guilty of all charges. The trial court sentenced Leanos to a total prison term of life plus five years and merged the attempted armed robbery charge with the felony murder conviction for sentencing purposes. On October 27, 2016, the trial court denied Leanos's motion for new trial, as amended. Leanos filed a timely notice of appeal, and her case was docketed to this Court's term beginning in December 2017 and submitted for a decision on the briefs.

to sustain the convictions and Leanos has not shown that trial counsel was ineffective.

Viewed in the light most favorable to the jury verdicts, the trial evidence showed the following. Leanos was a member of the local criminal street gang BOE 23, and BOE 23 was associated with SUR 13, a larger international criminal street gang. Both BOE 23 and SUR 13 were involved in various criminal activities, including armed robberies, drug sales, and homicides.

On March 15, 2015, Leanos called Valentin Hernandez and asked him to call Misty Moran. Moran, a co-defendant, was a member of SUR 13 and an aunt of Leanos's boyfriend. Moran asked Hernandez for a gun, and he gave her a 9-millimeter handgun.

Later that day, Leanos went to Moran's house. Moran had been shooting the handgun in her back yard when Leanos arrived and was carrying the gun when she greeted Leanos. Sometime later, according to statements made to police by co-defendants Moran and Nicholas Allen Gonzalez, who both testified at Leanos's trial, Leanos participated with Moran, Gonzalez, and two other co-defendants — Ignacio Mondragon and Justin Adams — in planning the robbery of a taxi driver. Gonzalez was a member of BOE 23 and SUR 13; Mondragon

2

was a member of BOE 23. The group planned to summon a taxi for Moran, who would convince the driver to pull over after driving some distance, at which point Leanos's co-defendants would appear and rob the driver and Leanos would drive the get-away car.

Around 11:00 that night, Leanos drove her co-defendants to an apartment complex in Hall County and, once there, called for a taxi. Moran waited for the taxi at the complex while Leanos drove the other defendants a short distance away to wait. The taxi driver picked up Moran; the defendants followed in Leanos's vehicle. At some point, Gonzalez saw smoke come out of a window of the taxi; the taxi then drove off the road. The taxi driver had been shot in the back of the head and fell out of the vehicle as it continued traveling until it hit a tree. The driver died as a result of the gunshot wound.

When the taxi came to a stop, Moran exited the taxi and made her way to Leanos's vehicle, which Leanos had pulled over. Leanos remained in the vehicle while the three male passengers exited her car and went to the taxi hoping to retrieve money. The men left empty-handed, however, deciding not to enter the taxi once they saw that the interior was covered in blood and a light on the porch of a nearby home was on.

3

Moran confessed that she shot the taxi driver and hid the gun in the sunroof of Leanos's vehicle as the group drove away. The group then began planning another crime. Leanos suggested a home invasion of her mother's house, but the idea was rejected given the possibility that someone could get hurt. The co-defendants, including Leanos, burglarized a trailer instead. Afterward, the defendants returned to Moran's residence, where Moran had Leanos shine her car lights so that Moran could see what she was doing as she hid the gun under a concrete slab. Moran later returned the gun to Hernandez and told him that she had used it to shoot a taxi driver.

1. *The evidence was sufficient to sustain Leanos's convictions.*

Leanos argues that the evidence was insufficient to sustain her convictions because the evidence shows that she did not knowingly participate in the crimes. Instead, she argues, the evidence shows that her co-defendants purposefully deceived her and concealed their true intent to rob the taxi driver. We disagree, because the evidence viewed in the light most favorable to the jury's verdict establishes that she knowingly participated in the crimes.

Under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be . . . convicted of commission of the

4

crime." But mere presence at the scene of a crime is insufficient evidence to convict one of being a party to a crime; "[p]roof that the defendant shares a common criminal intent with the actual perpetrators is necessary." Robinson v. State, 298 Ga. 455, 457 (1) (782 SE2d 657) (2016) (citation and punctuation omitted); see also Belsar v. State, 276 Ga. 261, 262 (1) (577 SE2d 569) (2003). Such shared criminal intent may be inferred from presence, companionship, and conduct before, during, and after the offense. See Belsar, 276 Ga. at 262 (1).

In support of her argument that she was merely present for the crimes and did not have the requisite intent, Leanos cites the trial testimony of co-defendants Moran, Gonzalez, and Mondragon in which the co-defendants stated that Leanos knew nothing of the plan to rob the taxi driver. But Gonzalez testified at trial that although Leanos did not know about the plan initially, she became aware of the plan while she and the co-defendants were waiting for Moran to drive by in the taxi prior to the shooting and that she nevertheless agreed to be the get-away driver. Moreover, Moran and Gonzalez both made pre-trial statements to the police that Leanos helped to plan the armed robbery of the taxi driver. This evidence, along with testimony establishing that Leanos helped Moran acquire the gun that was used in the crimes and helped Moran

5

conceal it after the crime, authorized the jury to conclude that Leanos was a party to the crimes and to find her guilty. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. *Trial counsel was not ineffective.*

Leanos argues that her trial counsel was ineffective on several grounds. To prevail on her claim, Leanos "must show that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." Scott v. State, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (citing Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). Where an appellant fails to meet her burden in establishing one prong of the Strickland test, we need not review the other, as a failure to meet either of the prongs is fatal to an ineffectiveness claim. See Lawrence v. State, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010). On review of an ineffectiveness claim, we review a trial court's factual findings for clear error and its legal conclusions de novo. Id. When conducting that review, we must focus on the circumstances known to counsel at the time of the alleged

6

deficiency and not judge counsel's actions through the distorting lens of hindsight. See State v. Mobley, 296 Ga. 876, 877 (770 SE2d 1) (2015).

(a) Leanos first claims that trial counsel was ineffective for failing to realize that the medication she was prescribed in jail rendered her incompetent to assist with and meaningfully understand critical trial proceedings. We disagree.

The evidence shows that a jail doctor prescribed her paroxetine, an anti-depressant, for her complaints of depression and anxiety. Leanos took the medication for about two months, from August through her trial in October 2015. The side effects of the drug can include a worsening of depression and anxiety, mental confusion, and "numbness." Leanos testified at the motion for new trial hearing that she discontinued taking the medication because she experienced these side effects. Trial counsel admitted that Leanos advised him that she was suffering from depression and had been prescribed medication at the jail. But trial counsel also testified that he did not observe any signs that Leanos was not competent to stand trial, Leanos never raised any concerns to him, and he would have informed the court if any doubts about her competency had arisen. The trial court noted that, in its interactions with Leanos during pre-

7

trial proceedings, she appeared to understand the nature of the proceedings and was able to participate.

Leanos now opines that she was rendered incompetent as a result of her medication and counsel deliberately ignored signs of her incompetence. But the trial court did not find her testimony on the issue to be credible and noted that Leanos provided no other evidence to support her claim. Trial counsel also testified that Leanos never complained about her mental capacity or raised any other concerns in that respect, and the trial court was authorized to accept trial counsel's testimony over Leanos's. See Watkins v. State, 285 Ga. 355, 357 (676 SE2d 196) (2009) ("[I]t is the function of the trial court at the hearing on the motion for new trial to determine witness credibility and to resolve any conflicts in the testimony." (citation and punctuation omitted)). Leanos cannot point to anything else in the record that should have led counsel to doubt her competency. Both the trial court and trial counsel stated that they observed no outward manifestations that would signal a lack of competence, and the record contains no medical opinion that Leanos was not competent to stand trial. See Traylor v. State, 280 Ga. 400, 404 (4) (a) (627 SE2d 594) (2006) (when reviewing whether there was sufficient information to raise a bona fide doubt

8

about a defendant's competency such that the trial court should have sua sponte conducted a competency hearing, appellate courts typically consider evidence of the defendant's irrational behavior or demeanor and any prior medical opinion regarding the defendant's competence to stand trial). Therefore, Leanos has failed to show that trial counsel was deficient on this ground.[2]

(b) Leanos next argues that trial counsel was ineffective in presenting a plea offer that he knew or should have known that she could not evaluate properly given her impaired mental state. But, again, the evidence does not show that trial counsel had any reason to doubt Leanos's competency. This claim fails.

(c) Leanos argues that trial counsel failed to present a coherent defense theory in that he failed to call certain witnesses, and that he was deficient for failing to introduce good character evidence. We disagree. "The decision to call a defense witness is a matter of trial strategy and tactics within the province of

---

[2] Contrary to Leanos's suggestion, this case is unlike Head v. Taylor, 273 Ga. 69 (538 SE2d 416) (2000). In that case, trial counsel was found to be ineffective for failing to ensure a client was properly medicated when the attorney *knew* that the defendant's paranoia and ability to cooperate were worsening as a result of not taking anti-psychotic medication. Id. at 78-79 (3). But here, although trial counsel knew Leanos was receiving medication, the record does not show that counsel knew Leanos was not properly medicated or, more importantly, that the side effects impaired her ability to assist in her defense.

the lawyer after consultation with the client." Williams v. State, 292 Ga. 844, 854 (3) (h) (742 SE2d 445) (2013).

(i) Leanos argues that by failing to call her as a witness, trial counsel did not present a coherent or persuasive defense theory that she was duped by the other co-defendants. But the record makes clear that Leanos was advised by trial counsel and the court that the decision to testify was ultimately hers to make. Leanos told the court that she did not want to testify and that she made this decision in consultation with trial counsel. Although Leanos now claims that she would have decided differently had she not been medicated, the trial court did not find her claim of impairment to be credible. Because she was fully informed that she — not trial counsel — made the ultimate decision whether to testify, Leanos cannot show that her decision to follow trial counsel's advice was indicative of his ineffectiveness. See Rivers v. State, 296 Ga. 396, 405 (11) (a) (768 SE2d 486) (2015); Lupoe v. State, 284 Ga. 576, 579 (3) (d) (669 SE2d 133) (2008).

(ii) Even though Leanos argues that trial counsel erred by not calling her as a witness and instead relying solely on the testimony of her co-defendants to support the defense theory, she nevertheless complains that counsel should have

called Adams, the one co-defendant who did not testify at her trial. Counsel testified that he did not call Adams based on statements Adams had given to police that were not helpful to the defense. We assume that assessment was reasonable, because Leanos did not call Adams to testify at the motion for new trial hearing or provide a legally acceptable substitute for his testimony. As a result, Leanos cannot show that trial counsel's tactical decision amounted to ineffective assistance. See Smith v. State, 297 Ga. 214, 217 (5) (d) (773 SE2d 209) (2015).

(iii) Trial counsel called a witness to testify about Leanos's good character during the sentencing phase of the proceedings, and Leanos argues that counsel was ineffective for failing to call that witness at the guilt-innocence phase. Trial counsel testified that he did not call that witness because he did not want to open the door to allow for the admission of evidence that Leanos had sold drugs to Moran, who allegedly was working as a confidential informant at the time. Although trial counsel conceded at the motion for new trial hearing that the evidence surrounding that drug sale might have helped show that Moran was consistently deceitful and would have supported the defense argument that she duped Leanos in this case, counsel's tactical decision is not to be judged in

11

hindsight. Mobley, 296 Ga. at 877. Counsel's assessment at the time was reasonable. When a witness testifies about a defendant's good character, the State may cross-examine that witness about the defendant's prior misconduct in an attempt to undermine the witness's credibility. See OCGA § 24-4-405 (c); see also United States v. Glass, 709 F2d 669, 673 (11th Cir. 1983) (analyzing similar Federal Rule of Evidence 405). Trial counsel was not deficient for deciding to forgo introduction of good character evidence at the guilt-innocence phase to avoid the possibility of opening the door to bad character evidence.

(iv) Leanos argues that trial counsel was ineffective for failing to request a severance of the gang charges and to object to the State's allegedly improper arguments made during opening and closing statements. At the motion for new trial hearing, Leanos did not question trial counsel about his decision not to object to the challenged statements or not to request a severance. Without trial counsel's testimony or some other evidence explaining the basis for his decisions, Leanos cannot overcome the presumption that those decisions were strategic and, thus, cannot establish that counsel was ineffective. See Bright v. State, 292 Ga. 273, 275 (2) (a) (736 SE2d 380) (2013); see also Lupoe v. State, 300 Ga. 233, 241 (2) (c) (794 SE2d 67) (2016) (rejecting ineffectiveness claim

12

based on failure to file a motion to sever where trial counsel was not questioned as to why he did not file the motion).

Judgment affirmed. All the Justices concur.

Decided May 7, 2018.

Murder. Hall Superior Court. Before Judge Deal.

Arturo Corso, for appellant.

Lee Darragh, District Attorney, Shiv Sachdeva, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.