312 Ga. 711
FINAL COPY

S21A0532.  EMMONS v. BRYANT.

LaGrua, Justice.

This appeal arises from the grant of a petition for habeas corpus filed by Steven Bryant in connection with his 2015 conviction for aggravated sexual battery.  In granting Bryant's petition, the habeas court ruled that Bryant's appellate counsel had rendered ineffective assistance by failing to properly assert several instances of trial counsel ineffectiveness, failing to properly present certain claims of trial court error, and failing to pursue relief for the violation of Bryant's right to conflict-free counsel under *Garland v. State*, 283 Ga. 201 (657 SE2d 842) (2008).  Shawn Emmons ("the Warden") contends that the habeas court erred, both in its substantive rulings and by granting relief on grounds not asserted by Bryant.  We agree with the Warden that the habeas court erred in its rulings.  Accordingly, we reverse.

1.  The facts and procedural history relevant to our

consideration of this appeal are as follows.

(a) *Indictment and Trial.*

In April 2015, Bryant was indicted on one count of aggravated sexual battery. The indictment charged that, in February 2015, Bryant intentionally penetrated the victim's vagina with his fingers without her consent. Also charged in the indictment was Kimberly Bridges, Bryant's girlfriend at the time, who later pled guilty to a lesser charge and testified at trial for the State.

The victim, Shirley Hudgins, died before trial. Without Hudgins' testimony, the State's case rested largely on the testimony of Bridges. Bridges testified that on the night of the incident, she and Bryant, who were staying at Hudgins' home at the time, had gotten high; that Bryant suggested waking Hudgins to participate in a sexual tryst but Bridges rejected the idea; and that, later, she saw Bryant commit the battery on Hudgins. Bridges also testified that Bryant texted Hudgins afterward to apologize.

The State also presented the testimony of three other witnesses who were in contact with Hudgins in the aftermath of the

2

incident.  Tina Gentry, a sexual assault nurse who examined Hudgins less than 24 hours after the incident, testified that in the course of her examination she observed a small abrasion in Hudgins' vaginal area, which was consistent with Hudgins' description of how she had been penetrated.  Gentry also testified that Hudgins described receiving text messages from Bryant after the incident, asking Hudgins to "just let this go and forget about it."  The other two witnesses — Hudgins' boyfriend, Jimmy Ray Hunter, and her close friend, Krista Barker — testified that Hudgins told them on the morning after the incident that she had awakened to find Bryant breathing heavily in her ear and with his fingers in her vagina; both testified that she was extremely distraught.

Bryant testified in his own defense, denying having touched Hudgins and claiming that he had only been attempting to ask her where he could find a light for his cigarette.  Bryant presented no other evidence.  The jury found Bryant guilty, and he was thereafter sentenced as a recidivist to life in prison without the possibility of

parole.[1]

(b) *Post-Trial Proceedings and Appeal.*

Through his appointed trial counsel, James Wyatt, Bryant filed a motion for new trial. While the motion for new trial was pending, Bryant filed a pro se motion to remove Wyatt, alleging he had rendered ineffective assistance. Seven days later, Bryant filed a pro se "amendment" to his pro se motion, indicating his desire to continue with Wyatt's representation. The motion for new trial was ultimately denied,[2] and, through Wyatt, Bryant appealed.

While the appeal was pending, Bryant filed various pro se motions in the trial court requesting the substitution of counsel, again alleging ineffective assistance and a conflict of interest. In light of these filings, Wyatt filed a motion on Bryant's behalf in the Court of Appeals, seeking a remand of the appeal. Wyatt also filed Bryant's appellate brief, asserting trial court error in various

---

[1] Bryant's prior felony convictions included those for obstruction of a law enforcement officer, first-degree forgery, and second-degree burglary.

[2] From the record before us, which appears to include only selected portions of the trial court record, it does not appear that the trial court ever ruled on either the motion to remove Wyatt or the amendment.

4

respects.  Subsequently, the motion to remand was granted, and the case was remanded to the trial court with direction to appoint new appellate counsel and to conduct "appropriate proceedings concerning the issue of ineffective assistance."

On remand, new appellate counsel, Juwayn Haddad, was appointed.  Haddad filed a second motion for new trial on Bryant's behalf, asserting both trial court error and ineffective assistance claims.  At the hearing on the motion, after the court reviewed the history of the case, Haddad notified the court that he had not been aware until then that any prior post-trial proceedings had taken place.  Presuming that any claims of trial court error had already been addressed, Haddad then proceeded only on the ineffectiveness claims, questioning Wyatt about his trial strategy in two respects. First, Haddad asked why Wyatt did not object to the testimony from Bridges and Gentry about Bryant's apologetic text messages to Hudgins, given that the original text messages were never admitted in evidence.  Wyatt responded that he "probably did not think to object" to them and there was no strategic reason he did not.  Second,

5

Haddad asked about why Wyatt did not cross-examine Bridges regarding her plea deal. Wyatt testified that he did not do so because "I was of the opinion she received quite a harsh sentence for her part in this case . . . . I think she had some probation revoked and — got some time for it, and her involvement was fairly minor, was my opinion." Following the hearing, the second motion for new trial was denied.

Bryant's appeal was transmitted back to the Court of Appeals,[3] and Haddad filed a second appellate brief, raising enumerations both as to trial court error and Wyatt's ineffectiveness. Rejecting these contentions, the Court of Appeals affirmed in an unpublished opinion. See *Bryant v. State*, 346 Ga. App. XXIII (Case No. A18A0342) (June 12, 2018) (unpublished). After concluding that the trial court had not abused its discretion in admitting Hudgins' hearsay statements through Barker and Gentry, the Court of

---

[3] Though Bryant filed a second notice of appeal following the denial of the second motion for new trial, the Court of Appeals dismissed that appeal as duplicative given the re-docketing of the initial appeal after the trial court's ruling on remand.

Appeals rejected Bryant's two claims of trial counsel ineffectiveness. First, as to Wyatt's failure to assert a "best evidence" objection[4] to the testimony about the apologetic text messages, the Court of Appeals held that Bryant had demonstrated no prejudice. See id., slip op. at 11-13 (2) (a). Specifically, the Court of Appeals held that Bryant had not demonstrated that the testimony regarding the text messages would not have been admissible under OCGA § 24-10-1004 (providing that original writings are not required if they are lost, destroyed, or otherwise unattainable). As to Bridges' plea deal, the Court of Appeals noted that Bryant had presented no evidence of the terms of the plea agreement, including the sentence Bridges received and whether the agreement required her to testify against Bryant. See *Bryant*, slip op. at 13-14 (2) (b). In addition, the Court of Appeals concluded that Wyatt's tactical decision not to probe Bridges on this topic — because he believed she had received a harsh sentence given her level of involvement — was not patently

---

[4] See OCGA § 24-10-1002 ("To prove the contents of a writing . . . the original writing . . . shall be required.").

unreasonable. See id., slip op. at 14 (2) (b).

(c) *Habeas Proceedings.*

Bryant filed a pro se petition for habeas corpus, which he later amended, asserting a litany of alleged trial and appellate errors and other claims, including due process violations, prosecutorial misconduct, and ineffective assistance of trial and appellate counsel. At the subsequent habeas hearing, both Haddad and Wyatt testified about their involvement in Bryant's case.

Upon questioning by the Warden's counsel, Haddad testified that he has practiced criminal defense since 1993 and, at the time he was appointed to represent Bryant, had handled more than 150 jury trials and 80 appeals. Haddad testified that he believed he was sufficiently prepared for the motion for new trial hearing and would have sought a continuance had he believed it was necessary. In pursuing Bryant's appeal, Haddad testified that he conferred with Bryant and reviewed Wyatt's initial appellate brief, Wyatt's trial file, and the trial transcript. As to which arguments to assert, Haddad testified that he decided to raise the two ineffectiveness

claims he believed were the strongest, stated that his practice on appeal was to raise only what he believed were the most viable issues, and explained his reasoning for not raising certain claims of trial error. Specifically, he explained that he had not challenged the trial court's refusal to give a jury instruction on the lesser included offense of sexual battery because he believed Bryant's denial of any contact with Hudgins precluded his entitlement to such an instruction; that he had not challenged Bryant's life-without-parole sentence because he believed the recidivist statute compelled that result; and that he had not raised insufficiency of the evidence because he did not believe it was a viable argument. He also testified that he believed he was procedurally barred from raising trial errors that had not already been raised in the initial appellate brief filed by Wyatt.

Bryant, who appeared at the hearing pro se, questioned Haddad only about what documents he had received from Wyatt and why he had not raised insufficiency of the evidence. Haddad reiterated that, in light of Bridges' and Gentry's testimony, he

"didn't think sufficiency was a valid argument to raise," noting also that, because this argument was not raised in the initial appellate brief, he believed he was barred from raising it.

Bryant questioned Wyatt at much greater length. Bryant asked whether Wyatt had obtained audio recordings of statements made to an investigating officer by Hudgins and her nephew, Jason Kilgore, who had been in the room at the time of the incident; Wyatt responded that he had not and did not know whether such recordings existed. With regard to Bridges' plea deal, Wyatt testified that he knew as of the time of Bryant's trial that the plea agreement provided for a probated sentence and required Bridges to testify at Bryant's trial. When asked why he had not cross-examined Bridges regarding the plea deal, Wyatt replied that, because Bridges' involvement in the incident was minimal, he "decided not to beat her up on that point."

Among the evidence admitted at the hearing was Bridges' plea hearing transcript, which reflects that Bridges pled guilty to aggravated assault and was sentenced to a two-year probated term,

10

consecutive to a three-year sentence she was serving at the time of her plea on a probation revocation.[5] The sentence was expressly conditioned on Bridges' testimony at Bryant's trial. The habeas record also includes the transcript from Bryant's preliminary hearing, at which the investigating officer, Ginger Ramey, testified that her interview with Hudgins had been recorded. Also included in the habeas record are the discovery materials that were provided to Wyatt by the State. No recordings of an interview with Hudgins or Kilgore are contained in the record before this Court.

Following the hearing, the habeas court issued a lengthy order, ruling that Haddad rendered ineffective assistance in a variety of ways in his handling of Bryant's appeal.[6] First, the court held that Haddad had failed to properly investigate Bryant's case. As a result, the court found, Haddad failed to identify and develop six particular

---

[5] The habeas court found that as a result of the guilty plea, Bridges was "immediately released from jail." There is no evidence to support this finding.

[6] None of Bryant's claims was raised specifically as a claim of ineffective assistance of appellate counsel, although he argued generally that "both [of his] attorneys" were ineffective. Additionally, the habeas court granted relief on several issues that Bryant did not raise. Nevertheless, even if all of these claims had been properly raised, we identify no merit to them.

11

claims of trial counsel ineffectiveness, including Wyatt's failure to conduct an adequate pretrial investigation, adequately cross-examine Bridges, develop evidence regarding Bridges' plea deal, object to Gentry's testimony, object to the text-message testimony, and adequately challenge the admission of Hudgins' hearsay statements. As to some of these subjects, the habeas court also ruled that Haddad had failed to properly present claims of trial error. Finally, the court ruled that Haddad rendered ineffective assistance by failing to assert a claim under *Garland* that Bryant was denied his right to conflict-free counsel after he began alleging ineffectiveness of trial counsel during the pendency of the appeal. See *Garland*, 283 Ga. at 205 (indigent defendants are constitutionally entitled to the appointment of conflict-free counsel on appeal). Concluding that the cumulative effect of these various deficiencies by appellate counsel was prejudicial, the habeas court concluded that Bryant was entitled to a new trial. This appeal followed.

2. On review of the disposition of a habeas petition, this Court

12

adopts the habeas court's findings of fact unless they are clearly erroneous, but applies the law to those facts de novo. See *Gramiak v. Beasley*, 304 Ga. 512, 513 (820 SE2d 50) (2018). Thus, where habeas relief is premised on ineffective assistance, we conduct a de novo review of "whether counsel's performance was deficient and whether any purported deficiency was prejudicial." *Johnson v. Williams*, 308 Ga. 791, 794 (2) (843 SE2d 550) (2020). See also *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984) (ineffective assistance of counsel is established by a showing that counsel's performance was deficient and the deficient performance prejudiced the defendant).

To establish ineffective assistance of appellate counsel, "the petitioner bears the burden of showing that appellate counsel was deficient in failing to raise an issue on appeal and that the deficiency prejudiced the defense." *Humphrey v. Lewis*, 291 Ga. 202, 210 (IV) (728 SE2d 603) (2012) (citation and punctuation omitted), overruled on other grounds by *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020). See also *Strickland*, 466 U. S. at 687 (III). Deficient performance is

shown by demonstrating that counsel discharged his responsibilities in an "objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Thomas v. State*, 303 Ga. 700, 702 (2) (814 SE2d 692) (2018) (citation and punctuation omitted). In assessing counsel's performance, we apply a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Head v. Ferrell*, 274 Ga. 399, 404 (V) (554 SE2d 155) (2001) (citation and punctuation omitted). "Appellate counsel does not render deficient performance by selecting stronger claims for presentation on direct appeal while setting aside weaker ones." Id.

Ordinarily, to show prejudice, a defendant must demonstrate "a reasonable probability[,] sufficient to undermine confidence in the outcome[,] that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009) (citation and punctuation omitted). As related to the performance of appellate counsel, a

determination of prejudice requires the finding of a reasonable probability that, absent the effect of appellate counsel's deficiencies, the result of the appeal would have been different. See *Gramiak*, 304 Ga. at 513 (I). Thus, where ineffectiveness of appellate counsel is premised on the failure to assert ineffectiveness of trial counsel, demonstrating that the outcome of the appeal would have been different necessarily requires establishing trial counsel's ineffectiveness. See id. ("[I]f [the defendant] cannot show his trial counsel provided ineffective assistance of counsel, then [he] also cannot show ineffective assistance of appellate counsel, because an attorney is not deficient for failing to raise a meritless issue on appeal.").

We begin by noting that the habeas court granted relief to Bryant on numerous grounds, and the Warden argues on appeal that relief on all those grounds was improper. Bryant's habeas petition substantively addresses only two of the habeas court's eight ineffectiveness rulings, namely, those regarding the *Garland* claim

15

and Wyatt's approach to Bridges' plea deal.[7]  We will address the merits of all of the habeas court's bases for relief, beginning with the two issues argued by both parties.

(a)  With regard to the first issue, the habeas court concluded that Haddad was ineffective by failing to assert a claim under *Garland* that Bryant was denied his right to conflict-free counsel on appeal after he began alleging ineffectiveness of trial counsel. Specifically, the court held that Bryant's rights under *Garland* were violated to the extent Wyatt continued representing him on the first motion for new trial and in the pre-remand appeal, and that Haddad should have raised this claim on appeal.  We disagree that Bryant's rights under *Garland* were violated, and we therefore disagree with the conclusion that Haddad was ineffective in failing to assert this issue on appeal.

In *Garland*, this Court held that a convicted defendant is "constitutionally entitled to the appointment of conflict-free counsel

---

[7] In his brief, Bryant maintains that all of the habeas court's findings were proper but notes that, because of "space constraints," his focus is on these "two major aspects" of the habeas court's decision.

16

to represent him on appeal." *Garland*, 283 Ga. at 205. As we later explained,

> [a] criminal defendant in Georgia is constitutionally entitled to the effective assistance of counsel during his trial, motion for new trial proceeding, and direct appeal. One component of the right to the effective assistance of counsel is the right to representation that is free of actual conflicts of interest.

*Hall v. Jackson*, 310 Ga. 714, 720 (2) (a) (854 SE2d 539) (2021) (citations and punctuation omitted). Accord *Williams v. Moody*, 287 Ga. 665, 667 (2) (697 SE2d 199) (2010). Where a defendant desires to assert claims of ineffective assistance against his trial counsel, the right to conflict-free counsel is implicated because "trial counsel [cannot] reasonably be expected to assert or argue his own ineffectiveness on appeal." *Garland*, 283 Ga. at 203.

For an appellant to carry his burden on a claim that he was denied conflict-free counsel, he must show that

> an actual conflict of interest significantly and adversely affected [counsel's] representation of [him]. [He] need not show actual prejudice, that is, a reasonable probability that the outcome of his motion for new trial or direct appeal would have been more favorable to him if [counsel] had not labored under a conflict of interest. Instead,

17

prejudice is presumed if [the appellant] demonstrates that the conflict of interest existed and that it significantly affected [counsel's] performance.

*Jackson*, 310 Ga. at 720 (2) (a) (citations and punctuation omitted).

In making this determination,

[t]he critical question is whether the conflict significantly affected the *representation*, not whether it affected the outcome of the underlying *proceedings*. That is precisely the difference between ineffective assistance of counsel claims generally, where prejudice must be shown under the two-part test set forth in [*Strickland*], and ineffective assistance of counsel claims involving actual conflicts of interest, which require only a showing of a significant effect on the representation.

Id. (citation and punctuation omitted; emphasis in original). Thus, there can be no Sixth Amendment violation where there is no *actual* conflict of interest. See id. (actual conflict of interest existed where appellate counsel admitted he failed to raise viable ineffectiveness claims against trial counsel, who was his direct supervisor); see also *Edwards v. Lewis*, 283 Ga. 345, 350-351 (2) (658 SE2d 116) (2008) (actual conflict existed where trial counsel and appellate counsel were both instructed by superiors not to raise what they believed was a valid challenge to the jury array due to alleged agreement

18

between public defender's office and superior court judges).

Here, the habeas court appears to have determined that an actual conflict of interest arose once Bryant began asserting his trial counsel ineffectiveness claims pro se and seeking the appointment of new counsel. Further, it determined that this conflict infected not just the proceedings during the time that Wyatt remained in his role as appellate counsel, but rather the entirety of the appeal proceedings, even after Haddad was appointed. We disagree with these determinations.

As an initial matter, Bryant's pro se filings asserting that Wyatt rendered ineffective assistance, submitted while Bryant was still represented by Wyatt, were "'unauthorized and without effect.'" *Williams*, 287 Ga. at 669 (2). See *White v. State*, 302 Ga. 315, 319 (2) (806 SE2d 489) (2017) (pro se filings made while litigant is represented by counsel are legal nullities). These filings alone thus could not create an actual conflict of interest. See *Williams*, 287 Ga. at 668-669 (2) (reversing finding of an actual conflict based solely on counsel's failure to withdraw when defendant filed invalid pro se

19

motion to assert ineffectiveness claims).[8]  Instead, Bryant's assertions of ineffectiveness were, at most, indicative of a *potential* conflict of interest.

"The potential for a conflict of interest . . . ripens into an *actual* conflict only when the conflict significantly and adversely affects the appellate lawyer's representation of the defendant." *Jackson*, 310 Ga. at 721 (2) (a) (emphasis in original).  Here, after the potential conflict arose[9] and went unaddressed by the trial court, Wyatt informed the Court of Appeals and sought a remand to address the issue.[10]  See generally *Garland*, 283 Ga. at 203 (noting that counsel raised his own alleged ineffectiveness and sought removal from representation).  At the same time, while awaiting a ruling on the

---

[8] Though such motions are nullities and must be dismissed, see *White*, 302 Ga. at 319-320 (2), it bears noting that trial courts are not precluded from taking action sua sponte, once the specter of a conflict is raised, to determine whether counsel should be replaced.

[9] While the potential conflict first arose when Bryant sought to replace his counsel during the initial motion for new trial proceedings, this potential conflict ceased to exist when Bryant withdrew that request and affirmatively requested that Wyatt stay on as counsel.

[10] We also note that Wyatt testified at the habeas hearing that, throughout the post-trial proceedings, he asked the Georgia Public Defender Standards Council to replace him due to Bryant's ineffectiveness allegations but was unsuccessful in those efforts.

motion to remand, Wyatt endeavored to preserve Bryant's claims of error by filing Bryant's appellate brief. Thus, the record reflects that after the potential conflict arose, Wyatt acted appropriately to protect Bryant's interests until the issue could be resolved. Then, when Haddad was ultimately appointed to replace Wyatt, the potential conflict was eliminated, as Haddad was then free to assert claims of ineffectiveness on the part of Wyatt. In sum, any potential conflict created when Bryant began submitting unauthorized filings asserting ineffectiveness never ripened into an actual conflict that could have significantly and adversely affected the representation, because new appellate counsel was appointed and Bryant had the opportunity to pursue trial counsel ineffectiveness claims both at the motion for new trial stage and on direct appeal with the assistance of conflict-free counsel.

Because Wyatt's representation of Bryant did not give rise to an actual conflict of interest, it follows that Haddad's failure to assert this issue on appeal did not amount to ineffective assistance. The habeas court erred in concluding otherwise.

(b) With regard to Bridges' plea deal, the Court of Appeals rejected this trial counsel ineffectiveness claim due to the lack of evidence about the plea agreement, and alternatively because it determined that Wyatt's decision not to cross-examine Bridges about her plea agreement was the product of reasonable strategy. See *Bryant,* slip op. at 14 (2) (b) ("[W]e cannot say that trial counsel's failure to cross-examine Bridges about her plea was patently unreasonable." (punctuation omitted)). However, the habeas court ruled that Haddad performed deficiently by failing to obtain the plea hearing transcript and final disposition, which would have enabled Haddad to question Wyatt more pointedly about his failure to cross-examine Bridges about her plea deal. The habeas court held that by failing to offer the transcript and final disposition into evidence at the second motion for new trial hearing, Haddad relinquished the opportunity to present evidence of the favorable terms of Bridges' plea deal and her resulting motives in testifying as she did. The habeas court thus determined that the lack of a transcript and final disposition prevented the Court of Appeals from concluding that

22

there was prejudice in Wyatt's failure to impeach Bridges, which also made it impossible to establish Wyatt's ineffectiveness.

Because Haddad's potential ineffectiveness in this regard depends on whether Wyatt was himself ineffective, we first examine Wyatt's performance on this issue. See *Gramiak*, 304 Ga. at 513 (I). As noted above, the transcript from Bridges' plea hearing reflects that she pled guilty to aggravated assault and was sentenced to serve two years on probation, consecutive to the three-year term of imprisonment she was then serving on a prior offense as to which her probation was revoked due to her arrest in this case. In addition, Bridges' plea was conditioned on her truthful testimony at Bryant's trial, for which Bridges received two years of probation instead of a potential sentence of 25 years to life and registration as a sex offender. See OCGA §§ 16-6-22.2 (c) (those convicted of aggravated sexual battery "shall be punished by imprisonment for life or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life"); 42-1-12 (a) (10) (B.1) (xiv) (defining "dangerous sexual offense"

as including aggravated sexual battery), (e) (2) (requiring all individuals convicted of a dangerous sexual offense to register as a sex offender). Thus, Wyatt could have questioned Bridges about this plea deal if he wanted to cast doubt on her motives in testifying against Bryant.

At the second motion for new trial hearing, Wyatt testified, upon questioning by Haddad, about why he had not cross-examined Bridges on the plea deal:

> Q: Now, you never actually asked or crossed [Bridges] about what she pled to. I mean, that was never clear. Is there a reason why you didn't — I mean, it ended up being an aggravated assault, but —
> A: Yeah. I think — I actually had the plea, transferred the plea. I was of the opinion she received quite a harsh sentence for her part in this case, and that's the reason I did not bring it into the evidence, the sentence that she received.
> Q: Okay. You said that — I couldn't hear you. You said —
> A: A harsh sentence, yes.
> Q: A harsh sentence? Now —
> A: For — for being there, and I think she had some probation revoked and — and got some time for it, and her involvement was fairly minor, was my opinion.

Wyatt reiterated his position at the habeas hearing, testifying that,

because the only allegations against Bridges were that "she saw [the battery]," he "decided not to beat her up on that point."  Thus, it is clear that Wyatt's lack of cross-examination about Bridges' plea deal was not an oversight on his part but rather a strategic decision.  The question is whether that decision was reasonable or, instead, was "so patently unreasonable that no competent attorney would have chosen it."  *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013) (citation and punctuation omitted).

Under that stringent standard, we conclude that Wyatt's decision to forgo cross-examination about Bridges' plea deal did not constitute deficient performance.  Based on what he viewed as the wide disparity between Bridges' alleged culpability and that of his own client, Wyatt opted not to risk alienating the jury by attacking Bridges' motives for testifying based on her plea deal.  Instead, Wyatt attempted to impeach Bridges' testimony in other ways, most notably, by eliciting an acknowledgment that Bridges wrote Bryant a letter after the alleged incident saying that "nothing happened."  In addition, Wyatt attempted to create doubt about Bridges' ability

25

to observe what happened by eliciting that she had used drugs on the night in question and that the lights were off in the living room at the time of the alleged incident. Wyatt also cast doubt on the validity of Hudgins' perception of what happened by eliciting that Hudgins took several medications at night, including Xanax, a muscle relaxant, and a sleep aid. Though Wyatt's cross-examination was ultimately not successful in convincing the jury to disbelieve Bridges' account, the fact that his strategy was unsuccessful does not mean that it was deficient. See *Crouch v. State*, 305 Ga. 391, 400 (3) (825 SE2d 199) (2019) ("It is well settled that 'hindsight has no place in an assessment of the performance of trial counsel.'").

In sum, we cannot say that Wyatt's strategy in cross-examining Bridges, viewed in its totality, was so patently unreasonable that no competent attorney would have pursued it. Absent a showing of deficiency, there can be no showing of ineffectiveness by Wyatt in this regard. See *Romer*, 293 Ga. at 344 (3) (insufficient showing on one prong of ineffectiveness claim obviates need to examine the other). And absent Wyatt's predicate

26

ineffectiveness, it is impossible to establish Haddad's ineffectiveness. See *Gramiak*, 304 Ga. at 513 (I). Accordingly, the habeas court erred in concluding that Haddad rendered ineffective assistance in this regard.

(c) The remaining grounds on which habeas relief was granted fall into three categories: (i) Haddad's alleged general failure to properly investigate and prepare for Bryant's appeal; (ii) Haddad's alleged failure to raise certain claims of trial counsel ineffectiveness; and (iii) Haddad's alleged failure to adequately argue and support certain claims he did raise on appeal. For the reasons discussed below, none of these grounds was sufficiently supported by the evidence.

(i) The habeas court ruled that Haddad generally failed to adequately investigate and prepare for Bryant's appeal. Citing Haddad's failure to seek a continuance once he became aware of the true posture of the case at the second motion for new trial hearing, the court noted that Haddad questioned Wyatt at that hearing only on a limited range of issues and then released him, thereby closing

27

the record as to Wyatt's ineffectiveness. As a result, the court held, Haddad was unprepared to identify and pursue numerous instances of Wyatt's ineffectiveness and to effectively argue the claims he raised on appeal.

Any alleged deficiencies in Haddad's investigation or preparedness could constitute ineffective assistance only if the resulting failure to raise claims of trial counsel ineffectiveness or trial error was prejudicial, i.e., only if those omitted claims would have had a reasonable probability of success had they been raised on appeal. See *Gramiak*, 304 Ga. at 513 (I). Thus, the success of this general failure-to-investigate ground depends on the merits of the remaining specific grounds on which relief was granted. We turn to these grounds now.[11]

(ii) The habeas court ruled that Haddad should have raised claims of trial counsel ineffectiveness based on Wyatt's failure to (a) obtain the recordings of Officer Ramey's interviews with Hudgins

---

[11] As already noted, even if we construed all of Bryant's claims as ineffective assistance of appellate counsel claims, we identify no merit to any of the grounds on which habeas relief was granted. See footnote 6 above.

28

and Kilgore and physical evidence yielded by Hudgins' sexual assault examination; (b) cross-examine Bridges regarding various facts that could have cast doubt on the accuracy of her testimony or helped undercut the State's case; and (c) object to Gentry's testimony about Hudgins' "feelings and impressions." We conclude that, in making these rulings, the habeas court failed to give effect to the strong presumption favoring counsel's strategic decisions and relied on speculation rather than evidence in the record in assessing prejudice.

At the habeas hearing, Haddad testified that his practice on appeal was to raise only the claims he believed were the strongest and explained specifically why he did not challenge the failure to instruct the jury on the lesser included offense of sexual battery, the recidivist sentence, and the sufficiency of the evidence. Significantly, Haddad was not questioned at the habeas hearing about his failure to assert any particular claims of trial counsel ineffectiveness. However, in testifying about his strategy, Haddad stated specifically with regard to ineffectiveness that he decided to

29

"limit it to . . . two points" that he believed were "the strongest." These "points" focused on Wyatt's failure to object to the incriminating text-message testimony and Wyatt's failure to cross-examine Bridges about her plea deal.

"[The] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Ferrell*, 274 Ga. at 404 (V) (citation and punctuation omitted). Thus, where appellate counsel makes a deliberate choice to raise certain issues on appeal and not others, the case for ineffectiveness is very difficult to make. See id.

Here, in light of Haddad's testimony that he purposefully elected to pursue the claims he believed were the strongest, Bryant has failed to overcome the presumption of reasonableness attached to Haddad's strategy. In assessing the relative strength of the ineffectiveness claims Haddad did raise versus that of the claims identified by the habeas court, we conclude that Haddad's choice of claims was objectively reasonable. Thus, we cannot say that his choice to focus on these issues, rather than the issues he deemed less

critical — even if the habeas court disagreed with counsel's strategic decision-making — constituted deficient performance. See *Ferrell*, 274 Ga. at 409 (V) (C) (2) (concluding that, in light of the weakness of a particular claim, "appellate counsel did not render deficient performance by focusing on other claims to the exclusion of [that] one").

In addition, these claims fail for a lack of any showing of prejudice. With regard to the recordings of Officer Ramey's interviews, to the extent such recordings even exist,[12] Bryant failed to make them part of the habeas record. Thus, whether any such recordings may have aided Bryant's defense is a matter of mere speculation. See, e.g., *Leanos v. State*, 303 Ga. 666, 671 (2) (c) (ii) (814 SE2d 332) (2018) (where defendant failed to offer evidence of what an uncalled witness's testimony would have been, there was no basis for a ruling of ineffectiveness grounded on counsel's failure to call that witness); *Heard v. State*, 296 Ga. 681, 685 (3) (d) (769

---

[12] While the record reflects that the interview with Hudgins was recorded, there is no evidence that the same was true of the interview with Kilgore.

SE2d 917) (2015) (same). Similarly, with regard to the evidence from the sexual assault examination, such evidence was not tendered at the habeas hearing, and no testimony was presented as to why this evidence would have been helpful to Bryant. See *Hambrick v. Brannen*, 289 Ga. 682, 685 (715 SE2d 89) (2011) ("Speculation will not satisfy the prejudice prong of *Strickland*.").[13] As to the failure to impeach Bridges, Bryant did not make a proffer of what Bridges' testimony would have been on any of the subjects of impeachment the habeas court identified, and thus there is no substantiated basis for any determination of prejudice. See *Leanos*, 303 Ga. at 671 (2) (c) (ii); *Heard*, 296 Ga. at 685 (3) (d). Finally, as to the failure to object to Gentry's testimony about Hudgins' "feelings and impressions," Gentry's testimony was not prejudicial because it was cumulative of the testimony of Hunter and Barker.

---

[13] Curiously, the habeas court also found that Wyatt's failure to obtain the recordings and physical evidence was "a potential *Brady* violation." See *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963). But even assuming there was a *Brady* violation — which is unlikely, given that the existence of the evidence in question was apparent, meaning that the evidence was not "suppressed" — such a violation would constitute misconduct on the part of the *prosecution* rather than reflect dereliction by trial counsel.

See, e.g., *Clarke v. State*, 308 Ga. 630, 634-636 (2), (3) (842 SE2d 863) (2020) (no prejudice where testimony to which counsel did not object was cumulative of other evidence).

(iii) With regard to the issues that Haddad did raise on appeal, the habeas court found that Haddad rendered ineffective assistance in two respects: first, by failing to question Wyatt on the existence and whereabouts of the original text messages in which Bryant allegedly apologized to Hudgins; and second, by failing to adequately challenge the admission of Hudgins' hearsay statements to witnesses Barker, Hunter, and Gentry. Because there is again no basis for any determination of prejudice resulting from Haddad's handling of these issues, these determinations of ineffectiveness cannot stand.

As to the first of these issues, Haddad did assert an ineffectiveness claim based on Wyatt's failure to object to the witnesses' testimony about the text messages. The Court of Appeals rejected this claim, concluding that, pretermitting whether Wyatt performed deficiently by failing to object on best-evidence grounds,

33

there had been no showing of prejudice because there was no indication that the State would not have been able to either produce the messages or satisfactorily account for their absence. See *Bryant*, slip op. at 11-12 (2) (a). The habeas court held that Haddad's failure to make a record to establish such prejudice constituted ineffective assistance.

This holding, however, assumes without evidence that Haddad would in fact have been able to make such a record. Bryant has presented no evidence or other indication that the original text messages could not have been presented at trial, or their absence sufficiently accounted for, in the event of an objection to the testimony about them. See OCGA §§ 24-10-1002, 24-10-1004. Indeed, the habeas court recognized that it was "speculative [as] to what the [evidence] would show." In the absence of any showing that the text-message evidence would not have been ultimately admissible, there is nothing to support a holding of trial counsel ineffectiveness or appellate counsel ineffectiveness on that basis. See *Gramiak*, 304 Ga. at 513 (I); *Wesley v. State*, 286 Ga. 355, 356

34

(3) (689 SE2d 280) (2010) (ineffectiveness cannot be premised on the failure to assert a meritless claim).

As to the second of these issues, the habeas court ruled that Wyatt failed to adequately challenge the admission of Hudgins' hearsay statements, in that, in his pretrial motion, Wyatt relied on obsolete case law construing the former Evidence Code and, in the initial appellate brief, Wyatt failed to adequately enumerate the issues. Haddad, the court held, then failed to present sufficient argument and citation of authority on these issues on appeal, including by failing to challenge the admission of these statements as Confrontation Clause violations.

Neither Bryant nor the habeas court, however, has identified how any additional argument or authority offered by Haddad on these issues would have affected the outcome of the appeal. Applying the correct analysis under the current Evidence Code, the Court of Appeals ruled that Hudgins' statements to Barker, one of Hudgins' close friends, were admissible under the residual hearsay exception. See OCGA § 24-8-807 (hearsay exception for statements

35

that are "offered as evidence of a material fact" and are more probative than other reasonably attainable evidence, so long as they have "circumstantial guarantees of trustworthiness"). Given Hudgins' unavailability to testify and the evidence of her close relationship with Barker, we agree with this ruling. See *Miller v. State*, 303 Ga. 1, 5-6 (2) (810 SE2d 123) (2018) (deceased victim's statement to close friend was sufficiently probative and trustworthy to be admissible under the residual exception). Contrary to the habeas court's suggestion, the Confrontation Clause would have had no relevance to Barker's testimony, insofar as Hudgins' statements to her close friend were not "testimonial." See *Franklin v. State*, 298 Ga. 636, 640 (2) (784 SE2d 359) (2016) (Confrontation Clause applies only to out-of-court statements that are "testimonial" in nature, meaning that their "primary purpose was to establish evidence that could be used in a future prosecution" (citation and punctuation omitted)). Because Barker's testimony was admissible, Haddad was not ineffective in failing to convince the Court of Appeals otherwise. This same analysis holds for the testimony of Hunter, Hudgins'

boyfriend.  And because Hudgins' statements to Gentry about the incident were cumulative of her statements to Barker and Hunter, even assuming Haddad was deficient in presenting this issue on appeal, there is no reasonable probability that the result of the appeal would have been different had he successfully argued that the statements to Gentry had been improperly admitted.

For the foregoing reasons, Bryant has failed to carry his burden to establish ineffective assistance of appellate counsel, and the habeas court therefore erred in granting habeas relief.

*Judgment reversed.  All the Justices concur.*

Decided October 5, 2021 — Reconsideration denied November 2, 2021.

Habeas corpus. Lowndes Superior Court. Before Judge Tunison.

*Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Matthew D. O'Brien, Assistant Attorneys General*, for appellant.

*Brian S. Kammer*, for appellee.